2004 ND 136

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Susan K. KROUS, Defendant and Appellant.**

No. 20030372.

Supreme Court of North Dakota.

June 30, 2004.

Susan Schmidt, Bismarck, N.D., for defendant and appellant.

Julie Ann Lawyer, Assistant State's Attorney, Bismarck, N.D., for plaintiff and appellee.

MARING, Justice.

[¶ 1] Susan Krous appeals a second amended criminal judgment entered when her probation for a drug related conviction was revoked. She also appeals the trial court's order denying her motion to suppress. We affirm, concluding the search of Krous's residence was a valid probationary search.

I

[¶ 2] Krous pled guilty to two counts of Delivery of a Controlled Substance and

one count of Conspiracy to Deliver a Controlled Substance. She was sentenced to imprisonment and probation. Once released and on probation, she was subject to the following conditions:

Condition (2)(g) Defendant shall submit to a medical examination or other reasonable testing including the Breathalyzer, Intoxilyzer, blood samples or urine samples for the purpose of determining the use of alcohol or controlled substances whenever requested by any probation officer.

Condition (2)(h) Defendant shall submit to search of her person, vehicle, or place of residence by any probation officer at any time of the day or night, with or without a search warrant.

Upon meeting with her probation officer, Krous initialed next to each condition of probation.

[¶ 3] Krous's initial probation officer was Brian Weigel. However, she was transferred to another probation officer, Sheila Schaefer. Around May 2003, an anonymous caller informed Weigel that Krous was altering her urinalysis in violation of condition (2)(g) of her probation. On April 29, 2003, Detective Kenen Kaizer of the Bismarck Police Department notified Weigel that Krous had been seen in a car with Shawn Barth in the late hours of April 28, 2003, or early hours of April 29, 2003. Detective Kaizer told Weigel that Krous had hindered the capture of Barth by stating that no one had been in the vehicle with her, when Barth had actually gotten out of the car and fled on foot. The next day, a witness positively identified Barth as the man in the car with Krous. At the time, Barth was a known drug user and drug trafficker and was wanted on warrants. After hearing Krous was seen with Barth, Weigel called Schaefer who informed him that Krous had not reported, that she could not get in contact with Krous, and that Krous was not returning her calls. Weigel took Krous's file back from Schaefer.

[¶ 4] The same morning Krous was seen with Barth, Weigel and the detective conducted a probation search of Krous's residence using the Special Incidents Unit of the Bismarck Police Department because of Barth's history of violence and weapons and because he was a fugitive from justice. Parked outside Krous's residence was the car in which Krous was seen with Barth. Weigel attempted to telephone Krous, but she would not answer the call. The special incidents team knocked on Krous's door. When she answered the door, they "took her to the ground" and verified no one else was in the home. They did not ask her for permission to search her residence. Krous was then allowed up. An extensive search was conducted, and illegal drugs and drug paraphernalia were found.

[¶ 5] Based on the evidence discovered in the search and Krous's probation violations, the State petitioned to revoke Krous's probation. Under N.D.R.Ct. 3.2, Krous moved to suppress the evidence obtained in the search, arguing officers must first ask her permission to search and if she withheld that permission to search, her probation could be revoked. She argues that officers had no authority to perform a warrantless search of her residence if she denied them permission to search.

[¶ 6] The State failed to respond to Krous's motion to suppress. Due to that failure, Krous sent a letter to the trial court requesting that it cancel the hearing and grant her motion to suppress. She argued that according to Rule 3.2, the evidence should have been suppressed because the State failed to provide a timely brief in opposition to her motion.

[¶ 7] The trial court chose to discuss Krous's request to cancel the hearing at

the beginning of the hearing on the motion to suppress. The trial court allowed each side to present an argument regarding the Rule 3.2 issue. Ultimately, the trial court allowed the State to present its case opposing the motion to suppress and assured the parties it would decide the Rule 3.2 issue after doing further research. In its Memorandum Opinion and Order, the trial court concluded that while a non-response is acknowledgment that the motion is meritorious, it does not mean the motion must be granted. Based on the merits of the pleadings and the hearing, the trial court denied Krous's motion to suppress. Krous appeals that order, the subsequent second amended criminal judgment, and the order revoking her probation for a drug related conviction.

## II

[¶ 8] On appeal, Krous argues the evidence obtained in the probationary search of her residence should have been suppressed.

## A

[¶ 9] Krous argues that because the State failed to provide a timely brief in opposition to her Rule 3.2 motion to suppress, her motion should have been granted. We disagree.

[¶ 10] Rule 3.2 states:

(a) ... Upon the filing of briefs, or upon expiration of the time for filing, the motion is deemed submitted to the court unless counsel for any party requests oral argument on the motion. If any party who has timely served and filed a brief requests oral argument, the request must be granted.... The court may require oral argument and may allow or require testimony on the motion....

(b) Failure to File Briefs. Failure to file a brief by the moving party *may*

*be deemed* an admission that, in the opinion of party or counsel, the motion is without merit. Failure to file a brief by the adverse party *may be deemed* an admission that, in the opinion of party or counsel, the motion is meritorious. *Even if an answer brief is not filed, the moving party must still demonstrate to the court that it is entitled to the relief requested.*

N.D.R.Ct. 3.2(a)–(b) (emphasis added). Our Court specifically amended N.D.R.Ct. 3.2 to include the discretionary language emphasized above. *See Memo to Joint Procedure Committee* 93–97 (January 16, 1996); *Memo to Joint Procedure Committee* 34–39 (March 23, 1984). Effectively, the decision to allow a hearing on a Rule 3.2 motion is discretionary even if the opposing party failed to file a brief. Therefore, the issue in this case becomes whether the trial court abused its discretion when it allowed the State to put on evidence at the motion to suppress hearing and when it considered the merits of that evidence after the State failed to file a brief. A trial court judge "may require oral argument and may allow or require testimony on" a Rule 3.2 motion. N.D.R.Ct. 3.2(a).

[¶ 11] The trial court heard arguments from both sides as to whether the State should be allowed to present evidence at the hearing. In addition, the trial court deferred its decision until it could do more research regarding Rule 3.2. Failure to file a brief in response to a Rule 3.2 motion does not automatically grant the relief requested in the motion. *Hartman v. Hartman*, 466 N.W.2d 155, 156 (N.D. 1991). It is within the trial court's discretion whether to allow the State to put on evidence during the motion to suppress hearing and whether to consider the

State's evidence when deciding the merits of the motion to suppress. We conclude the trial court did not abuse its discretion.

B

[¶ 12] Krous argues the word "submit" in condition (2)(h) of her conditions of probation requires a person conducting a probationary search to first ask the probationer's permission to search. She argues that if a probationer denies permission to search, probation may be revoked, but she argues that the person conducting a probationary search may not then execute a warrantless search. Therefore, she argues that because no one asked her permission to search, the evidence obtained in this warrantless search should be suppressed. We disagree.

[¶ 13] Condition (2)(h) of Krous's conditions of probation states that she "shall submit to search of her person, vehicle, or place of residence by any probation officer at any time of the day or night, with or without a search warrant." Section 12.1–32–07(4)(n), N.D.C.C., expressly provides that the conditions of probation may require the probationer to "[s]ubmit the defendant's person, place of residence, or vehicle to search and seizure by a probation officer at any time of the day or night, with or without a search warrant."

[¶ 14] On appeal Krous requests this Court to interpret the word "submit" in her condition of probation and in N.D.C.C. § 12.1–32–07(4)(n). Issues of interpretation and application of statutes are questions of law fully reviewable by this Court. *State v. Norman,* 2003 ND 66, ¶ 14, 660 N.W.2d 549 (quoting *Overboe v. Farm Credit Servs.,* 2001 ND 58, ¶ 9, 623 N.W.2d 372). Krous does not argue in the alternative, that the underlying search was unconstitutional even if we disagree with her interpretation of the word "submit."

Therefore, interpretation of her condition of probation is a question of law.

[¶ 15] Krous requests that we adopt Oregon authority supporting her argument. *See State v. Gulley,* 324 Or. 57, 921 P.2d 396 (1996); *State v. Hindman,* 125 Or.App. 434, 866 P.2d 481 (1993); *State v. Davis,* 133 Or.App. 467, 891 P.2d 1373 (1995). Oregon courts hold that the word submit "leaves in the hands of the probationer the power to resist a search that the probation officer may wish to make," but that the probationer then risks potential probation revocation. *Gulley,* 921 P.2d at 398; *see also Hindman,* 866 P.2d at 483; *Davis,* 891 P.2d at 1378–79. Oregon courts also hold that a probationer's consent to search is not prospective consent and must be asked for or given before the search is conducted. *Id.*

[¶ 16] In *State v. Schlosser,* 202 N.W.2d 136 (N.D.1972), we held that a virtually identical condition of probation was reasonable under the Fourth Amendment to the United States Constitution. *Id.* at 139. In *Schlosser,* we concluded that a probationer's Fourth Amendment rights were limited by his status as a probationer. *Id.* In addition, we concluded the courts have a responsibility to regulate a probationer's activities to help in his rehabilitation. *Id.* We held the condition was an element of a regulatory program, which does not require the probationer's consent. *Id.* We decline to adopt Oregon's interpretation of this condition of probation including the word "submit," and we interpret this condition of probation to include prospective consent to reasonable searches.

[¶ 17] We find support for our conclusion in numerous other jurisdictions. The Alaska Court of Appeals stated, "[i]t appears, however, that Oregon stands alone in their interpretation of the disputed language." *State v. James,* 963 P.2d 1080,

1083 (Alaska Ct.App.1998). The Alaska Court of Appeals cited numerous jurisdictions that were presented with the interpretation of conditions requiring a probationer to "submit" to a search and that held such conditions authorize a warrantless probationary search. *See id.* (citing *Owens v. Kelley*, 681 F.2d 1362 (11th Cir. 1982); *People v. Kasinger*, 57 Cal.App.3d 975, 129 Cal.Rptr. 483 (1976); *People v. Turner*, 54 Cal.App.3d 500, 126 Cal.Rptr. 652 (1976); *State v. Peters*, 130 Idaho 960, 950 P.2d 1299 (Ct.App.1997); *State v. Benton*, 82 Ohio St.3d 316, 695 N.E.2d 757 (1998); *Himmage v. State*, 88 Nev. 296, 496 P.2d 763 (1972); *People v. Fortunato*, 50 A.D.2d 38, 376 N.Y.S.2d 723 (N.Y.App. Div.1975); *State v. Martinez*, 811 P.2d 205 (Utah Ct.App.1991); *Anderson v. Commonwealth*, 25 Va.App. 565, 490 S.E.2d 274 (1997)).

[¶ 18] The rationale provided, when rejecting the assertion that the word "submit" requires submission to a search only when requested to do so, is that such a construction would render the condition meaningless and would defeat the purposes of such conditions to deter further offenses by the probationer and to determine compliance with the terms of probation. *See Himmage*, 496 P.2d at 765.

[¶ 19] We agree with the courts allowing warrantless probationary searches when the conditions of probation include a condition such as in (2)(h) or in N.D.C.C. § 12.1–32–07(4)(n), and we hold the condition of probation in this case which includes the word "submit" means that the probationer consents to reasonable warrantless searches without any request for consent by officers. Krous consented to having her Fourth Amendment rights limited when she accepted the conditions of probation.

III

[¶ 20] Finally, Krous argues the manner of the search was unreasonable in violation of the Fourth Amendment, because she argues the officers took her to the ground when she opened the door.

[¶ 21] The Alaska Court of Appeals recognized the ability of a probation officer to abuse this grant of authority by searching a probationer's person, vehicle, or place of residence to harass a probationer. *James*, 963 P.2d at 1083–84. We also recognize this potential abuse. Any search conducted under a condition of probation must be conducted in a reasonable manner. U.S. Const. amend. IV. The terms of the condition do not authorize searches conducted in an unreasonable manner.

[¶ 22] Krous's brief on appeal states, "... the use of force to accomplish the search was an unacceptable intrusion upon her privacy in these circumstances." That part of one sentence is her entire argument on this issue. Krous cites no authority to support her conclusion that the use of force in this case was unreasonable. We have repeatedly stated a party that wishes to make a constitutional argument must fully brief the issue. *State v. Causer*, 2004 ND 75, ¶ 56, 678 N.W.2d 552. In addition, Krous did not raise this argument to the trial court. We have also repeatedly stated that we will not address arguments raised for the first time on appeal. *See, e.g., State v. Kelly*, 2001 ND 135, ¶ 29, 631 N.W.2d 167. Therefore, we will not address this argument on appeal.

IV

[¶ 23] We affirm Krous's second amended criminal judgment, the order denying suppression of the evidence discovered in the probationary search, and the order revoking her probation.

[¶ 24] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.