2006 ND 209

**STATE of North Dakota, Plaintiff and Appellant**

v.

**Charles ODOM, Defendant and Appellee.**

No. 20060106.

Supreme Court of North Dakota.

Oct. 17, 2006.

Julie A. Lawyer (argued), Assistant State's Attorney, and James W. Martens, Third–Year Law Student (on brief), Bismarck, ND, for plaintiff and appellant.

Robert V. Bolinske, Jr., Bismarck, ND, for defendant and appellee.

MARING, Justice.

[¶ 1] The State of North Dakota appeals the trial court's order suppressing evidence found during a search of a locked safe in Charles Odom's hotel room after Odom gave consent to police to search the room. The State claims Odom's consent to search the room allowed the police to search the safe. We reverse the trial court's order suppressing the evidence found in the hotel room safe and remand for further proceedings.

I

[¶ 2] On December 4, 2005, a Bismarck Days Inn manager informed Bismarck Police Detective Cody Trom that Odom was staying at the hotel. Trom contacted Detective Paul Olson and informed him a warrant for Odom's arrest was outstanding and provided Odom's location. The arrest warrant was for a two-year-old drug paraphernalia charge.

[¶ 3] Along with Lieutenant Bob Haas, Olson executed the arrest warrant outside the hotel. After Odom's arrest, Olson and Odom waited inside the hotel for a patrol vehicle to transport Odom. While waiting for the patrol vehicle, and before reading Odom his Miranda rights, Olson spoke with Odom about the arrest warrant, Odom's hotel room number, and whether there were other individuals staying with Odom in the hotel room. After Odom's Miranda rights were read, Olson questioned Odom about the presence of narcot-

ics in Odom's room. Odom initially denied having narcotics in the room. Olson asked how Odom arrived in Bismarck and who picked him up. Odom arrived in Bismarck via bus and was picked up by an acquaintance. Olson knew the acquaintance to be a crack cocaine dealer in Bismarck. Olson again asked Odom several times whether there were narcotics in the hotel room. Odom then admitted the presence of narcotics in his room, but did not reveal the type of narcotics. Olson asked for and received Odom's consent to search the room. Odom said, "you are going to find it anyway. Go ahead." Odom did not place any limitations on the scope of his consent.

[¶ 4] Having consent to search Odom's hotel room, Olson entered the room, confirmed no other individuals were in the room, and did a preliminary sweep of the room for narcotics. By the time Olson began the search, the patrol vehicle had arrived. Odom was placed in the care of the patrol officers. During the initial sweep, Olson found a piece of paper with the known drug dealer's name and phone number. This suggested to Olson the possibility that narcotic activity had occurred in the room.

[¶ 5] Olson also found the room's safe was locked and the key was missing. Olson spoke with Odom about the missing key. Odom said he did not have the key and did not know who did. Olson asked the hotel manager for the master key so Olson could open the safe. Odom did not withdraw his consent to search the room. In the safe, Olson found a digital scale on which was cocaine residue, a bundle of cash totaling just under $1,000, and a "big chunk of crack cocaine."

[¶ 6] Odom was charged with possession of cocaine with intent to deliver and possession of drug paraphernalia. Odom moved to suppress the safe's contents as illegally obtained evidence. The trial court

granted Odom's motion to suppress the evidence found in the safe. The trial court found Odom had consented to a search of the room, but retained an expectation of privacy in the safe because he did not give specific consent to search the safe. The State appeals.

## II

[¶ 7] The State claims the evidence seized from the safe in Odom's hotel room was wrongfully suppressed because Odom's consent to search the room included the locked safe.

[¶ 8] As we recently explained in *State v. Graf*, 2006 ND 196, ¶ 7, 721 N.W.2d 381 (citations omitted):

In reviewing a district court's decision on a motion to suppress evidence, we defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. We will affirm a district court's decision on a motion to suppress if there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence. Our standard of review recognizes the importance of the district court's opportunity to observe the witnesses and assess their credibility. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.

[¶ 9] Unreasonable searches and seizures are prohibited by the federal and state constitutions. U.S. Const. amend. IV; N.D. Const. art. I, § 8; *State v. Woinarowicz*, 2006 ND 179, ¶ 21, 720 N.W.2d 635. "Warrantless searches are unreasonable unless they fall within a recognized exception to the warrant requirement." *State v. Genre*, 2006 ND 77, ¶ 17, 712 N.W.2d 624. Consent is a well-estab-

lished exception to the warrant requirement. *Id.*

■■■ [¶ 10] The scope of an individual's consent is determined by "considering what an objectively reasonable person would have understood the consent to include." *United States v. Urbina,* 431 F.3d 305, 310 (8th Cir.2005). The reasonableness inquiry is applied to the understanding of an officer who is conducting a search. *See United States v. Lopez–Vargas,* 457 F.3d 828, 830 (8th Cir.2006). Whether a search exceeds the scope of consent is a factual question, subject to the clearly erroneous standard of review. *State v. Huether,* 453 N.W.2d 778, 782 (N.D.1990).

■■■ [¶ 11] Olson asked Odom for consent to search Odom's hotel room. Odom voluntarily gave consent. Odom's consent allowed Olson to search the room without a warrant and was not limited. We conclude an objectively reasonable officer would have thought Odom's unlimited consent extended to any closed or locked container located in the room. Olson, therefore, reasonably believed Odom's consent included the safe. Specific consent to search every container is not needed when consent to search a room is given. *See Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). Requiring such detailed consent would dictate that police officers inventory a room for every possible item for which specific consent is needed and then ask for specific consent to search each item. This "would impose an impossible burden on the police. It would mean that they could *never* search closed containers within a dwelling (including hotel rooms) without asking the person whose consent is being given *ex ante* about every item they might encounter." *United States v. Melgar,* 227 F.3d 1038, 1042 (7th Cir.2000). This is a burden we are not willing to impose on North Dakota law enforcement.

■■■ [¶ 12] "The scope of a search is generally defined by its expressed object." *Jimeno,* 500 U.S. at 251, 111 S.Ct. 1801. When determining reasonableness, a court must consider what the parties knew at the time to be the object of the search. *United States v. Martinez,* 949 F.2d 1117, 1119 (11th Cir.1992).

[¶ 13] Odom knew the expressed objects of Olson's intended search were narcotics because Olson repeatedly asked Odom about the presence of narcotics in the hotel room. Odom admitted there were narcotics in the room and gave consent to Olson to search specifically for narcotics by stating, "you are going to find it anyway. Go ahead." There was no doubt as to the expressed objects of the search. Because narcotics were the expressed objects of the search, Olson's search of a locked safe in which narcotics were likely to be hidden was reasonable.

■■■ [¶ 14] "A suspect may of course delimit as he chooses the scope of the search to which he consents. But if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." *Jimeno,* 500 U.S. at 252, 111 S.Ct. 1801. A reasonable person may be expected to know that narcotics are generally carried in a container. *Id.* at 251, 111 S.Ct. 1801. A search is conducted within the scope of consent when there is a failure to object to a continuation of the search. *United States v. Santurio,* 29 F.3d 550, 553 (10th Cir.1994).

[¶ 15] At no time before or during Olson's search did Odom withdraw or limit his consent to search the hotel room. Odom could have prevented Olson from searching the safe by indicating to Olson

consent did not extend to the safe. Despite ample opportunity, Odom did not do this. With no limitations placed on the search by Odom, Olson reasonably understood the consent to extend to the locked safe.

[¶ 16] In *Jimeno,* the United States Supreme Court stated, "[i]t is very likely unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk, but it is otherwise with respect to a closed paper bag." 500 U.S. at 251–52, 111 S.Ct. 1801. The trial court's reliance on this statement in granting Odom's motion to suppress the evidence found in the safe is misplaced. In *Jimeno,* the Supreme Court reasoned the specific "breaking open," or damaging, of a briefcase during a search would go beyond the scope of a suspect's consent. *See Jimeno,* 500 U.S. at 251–52, 111 S.Ct. 1801. General consent "to search does not include permission to inflict intentional damage to the places or things to be searched." *United States v. Torres,* 32 F.3d 225, 231–32 (7th Cir.1994) (citation omitted). In *Torres,* a police officer, without causing damage, removed six screws from a wooden compartment that contained marijuana. 32 F.3d at 228. The court concluded it was reasonable for the officer to believe the suspect's consent allowed the officer to open the container by unscrewing the screws. *Id.* at 232. Here, as in *Torres,* Olson did not damage or destroy the safe when he opened it with the master key. Therefore, the trial court misapplied the law in *Jimeno.*

### III

[¶ 17] The trial court erred in concluding Odom's consent to a search of his hotel room did not include the locked safe located in the room because Odom gave general consent to a search of the hotel room for

narcotics and failed at any time to limit the scope of the search.

[¶ 18] We reverse the trial court's order suppressing the evidence found in the hotel room safe and remand for further proceedings.

[¶ 19] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.