2007 ND 192

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Brian Shawn HURT, Defendant and Appellant.**

No. 20070081.

Supreme Court of North Dakota.

Dec. 13, 2007.

Reid A. Brady (argued), Assistant State's Attorney, Fargo, ND, for plaintiff and appellee.

Jesse N. Lange (argued), Aaland Law Office, Fargo, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1]   Brian Hurt appeals from a criminal judgment following his conditional guilty pleas for one class C felony and one class A misdemeanor count of possessing drug paraphernalia, arguing the district court erred in denying his motion to suppress evidence.  Hurt argues the probation search of his apartment, under the terms of his roommate's probation conditions, violated his Fourth Amendment rights under the United States Constitution.  We hold the prohibition against unreasonable searches and seizures was not violated when probation officers searched the common areas of his apartment.  We affirm the criminal judgment.

I

[¶ 2]   On April 21, 2006, Rosally Mortenson went to visit the apartment of her boyfriend, Brian Hurt.  Just outside Hurt's secured apartment building, Mortenson met three women, who asked if Mortenson could let them inside.  Mortenson let the women into the building.  The women then followed Mortenson to the apartment door of Hurt and his roommate, Jessica Bickler, who was on probation.  The women, who were probation officers assigned to Bickler, waited at the door while Mortenson knocked.  Bickler answered the door and the probation officers entered the apartment under paragraph 16 in Bickler's probation conditions, which provided that Bickler must

[s]ubmit the Defendant's person, place of residence and vehicle, or any other property to which the Defendant has access, wherever they may be found, to search and seizure, with or without a search warrant, at any time of day or night by: 1) any parole or probation officer; or, 2) any law enforcement officer at the direction of a parole or probation officer; or, 3) any law enforcement officer with a reasonable suspicion of criminal conduct.

Because of this condition of probation, the probation officers did not ask for or receive consent to enter the apartment nor did they announce their arrival as they entered the apartment.  Hurt and other individuals in the living room of the apartment did not see the probation officers come in.

[¶ 3]   After entering the apartment, the officers walked through the kitchen and living room.  When the officers reached the living room, they saw drug paraphernalia on the coffee table.  The officers told the individuals in the living room if they were nonresidents, they could leave the apartment.  Hurt admitted he was a resident and stayed.  A police officer, who was called to the scene after the initial entry, placed Hurt under arrest for possession of drug paraphernalia.  Hurt was searched

incident to arrest, and the officer found a glass pipe with what appeared to be drug residue in the pocket of his sweatshirt.

[¶ 4] Hurt was charged with two counts of possession of drug paraphernalia. Hurt moved to suppress the evidence obtained during the probation search, arguing the evidence violated his Fourth Amendment rights because there was no warrant or warrant exception specific to him; the probation search and all evidence gathered as a result, Hurt argued, should be admissible only against his probationer roommate, Bickler. At a hearing on the motion, the district court judge denied the motion to suppress. Hurt entered conditional guilty pleas to the two counts of possession of drug paraphernalia and now appeals. On appeal, he argues the probation search of his apartment violated his Fourth Amendment rights under the United States Constitution and requests this Court overturn his convictions, permitting him to withdraw his conditional guilty pleas.

## II

[¶ 5] When this Court reviews a district court's decision to grant or deny a motion to suppress, the district court's findings of fact are given deference, and conflicts in testimony are resolved in favor of affirmance. *State v. Albaugh*, 2007 ND 86, ¶ 8, 732 N.W.2d 712 (citing *State v. Goebel*, 2007 ND 4, ¶ 11, 725 N.W.2d 578). Questions of law are fully reviewable on appeal. *Id.* (citing *Goebel*, at ¶ 11). In this case, there are no disputed facts; the review involves a question of law.

[¶ 6] The Fourth Amendment to the United States Constitution, enforceable against the States by the Fourteenth Amendment, *State v. Ressler*, 2005 ND 140, ¶ 10, 701 N.W.2d 915 (citation omitted), protects "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Generally, in order for law enforcement to enter and search a person's home while complying with the constitutional constraints of the Fourth Amendment, the search must be accompanied by a warrant. *See Illinois v. Rodriguez*, 497 U.S. 177, 184–86, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *see also Albaugh*, at ¶ 10. If, however, the entry and search fall within a recognized exception to the warrant rule, the search may be constitutionally permissible. *See Rodriguez*, 497 U.S. at 184–86, 110 S.Ct. 2793 (holding a co-occupant's consent was a valid exception to the warrant requirement as to his fellow occupants, even when the fellow occupant was not physically present and thus could not object to the search); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (holding no warrant necessary when defendant consents to search).

[¶ 7] The exception to the warrant requirement applicable to this case occurs when a search is conducted in "situations in which voluntary consent has been obtained, either from the individual whose property is searched, [ ], or from a third party who possesses common authority over the premises [ ]." *Rodriguez*, at 181, 110 S.Ct. 2793 (internal citations omitted). The United States Supreme Court has recognized the validity of searches in which a co-occupant, who shares common authority over the property, consents to a search of the home when the defendant was absent from the premises. *Georgia v. Randolph*, 547 U.S. 103, 109, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006) (citing *United States v. Matlock*, 415 U.S. 164, 170, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (holding a co-occupant's consent to search common areas of a home in the absence of the other occupant was constitutional, and evidence gath-

ered during the search could be used against the absent, nonconsenting occupant)). The United States Supreme Court has also recognized the validity of searches in which the fellow occupant, vested with common authority, gives consent, and the defendant is present, but unaware consent had been given and unaware law enforcement was entering the home to conduct a search. *See Rodriguez*, 497 U.S. at 180, 186, 189, 110 S.Ct. 2793 (search and seizure held constitutional when police reasonably, but erroneously, believed a woman was a co-occupant with her boyfriend, the defendant, and the woman allowed police to enter the house to search while her boyfriend was asleep in the home). With regard to the rationale underlying the reasonableness of the common-area, co-occupant-consent exception to the warrant requirement, the United States Supreme Court explained:

> The authority which justified the third-party consent does not rest upon the law of property, with its attendant historical and legal refinement, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Randolph*, at 110, 126 S.Ct. 1515 (quoting *Matlock*, 415 U.S. at 171, n. 7, 94 S.Ct. 988).

[¶ 8] Hurt contends the United States Supreme Court's recent decision in *Georgia v. Randolph*, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), applies to the instant case. Hurt urges this Court to interpret *Randolph's* holding to require law enforcement to seek and receive consent of, or at least offer an opportunity to refuse consent to, all occupants in a home before conducting a search. If such opportunity to assert Fourth Amendment rights is not provided, Hurt argues, the evidence should not be admissible against the nonconsenting co-occupants. Hurt argues the *Randolph* decision requires law enforcement to receive something more than the consent of only one co-occupant, when other co-occupants are not physically present at the door, before the police may validly enter the home to search for and ultimately use evidence found against all occupants. Hurt misreads *Randolph* and the underlying cases that define its narrow holding.

[¶ 9] In *Randolph*, a wife called police, alleging she and her spouse, Scott Randolph, had engaged in a domestic dispute, her husband had taken their son after the dispute, and her husband was a cocaine user. 547 U.S. at 107, 126 S.Ct. 1515. Shortly after the police arrived in response to the wife's complaint, Randolph returned to the home. *Id.* When the officers spoke with Randolph, he denied the allegations made by his wife and made similar accusations about her in turn. *Id.* The police again spoke with the wife, who renewed her complaints and stated there was evidence of Randolph's drug use inside their home. *Id.* One of the officers asked Randolph for consent to search his home. *Id.* Randolph "unequivocally refused" to give permission to search. *Id.* The officer then turned to the wife and requested her consent. *Id.* The wife agreed to the search. *Id.* The officers searched the home, found evidence of Randolph's drug use, and ultimately he was indicted for possession of cocaine. *Id.* Randolph moved to suppress the evidence gathered during the search; the trial court denied the motion, finding his wife had common authority over the home and could, therefore, consent to the search even though Randolph refused permission for the search. *Id.* at 107–08, 126

S.Ct. 1515. The United States Supreme Court held the search unconstitutional because Randolph's refusal prevailed over his wife's subsequent consent, despite the common authority they shared in the home. *Id.* at 108, 126 S.Ct. 1515.

[¶ 10] Hurt argues *Randolph* applies in his case and makes the search unconstitutional because Hurt did not have the opportunity to object, but he, like Randolph, surely would have objected if the officers had given him the opportunity. Hurt argues the officers gained entry into the home in a manner that "could arguably be considered a subterfuge" and the manner of entry that "did not give anyone a chance to protest."

■ [¶ 11] Contrary to Hurt's assertion, *Randolph* does not require law enforcement to provide co-occupants any opportunity to assert their Fourth Amendment rights at the door. Rather, *Randolph* merely provides "a physically present co-occupant's stated refusal to permit entry prevails [over the consent of his fellow occupant], rendering the warrantless search unreasonable and invalid as to him." *Randolph,* 547 U.S. at 106, 126 S.Ct. 1515. The Court explained the co-occupant who is not present at the door and does not flatly refuse the search at the time his fellow occupant provides consent "loses out" on his opportunity to exclude evidence gathered in a common area co-occupant consent search. *Id.* at 121, 126 S.Ct. 1515. The Court stated:

> So long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection, there is practical value in the simple clarity of complementary rules, one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary

indication when he expresses it. For the very reason that *Rodriguez* held it would be unjustifiably impractical to require the police to take affirmative steps to confirm the actual authority of a consenting individual whose authority was apparent, we think it would needlessly limit the capacity of the police to respond to ostensibly legitimate opportunities in the field if we were to hold that reasonableness required the police to take affirmative steps to find a potentially objecting co-tenant before acting on the permission they had already received. There is no ready reason to believe that efforts to invite a refusal would make a difference in many cases, whereas every co-tenant consent case would turn into a test about the adequacy of the police's efforts to consult with a potential objector.

*Randolph,* at 121–22, 126 S.Ct. 1515.

[¶ 12] To explain the "complementary rules" regarding co-occupant consent, the Court cites and discusses two significant cases, *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), and *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), which narrow and shape the scope of the *Randolph* decision. *Randolph,* 547 U.S. at 109–112, 120–21, 126 S.Ct. 1515.

[¶ 13] In *Matlock,* the defendant objected to the admission of evidence obtained during a search of his home. 415 U.S. at 166, 94 S.Ct. 988. Matlock's home was searched after he was arrested in his yard and subsequently placed in a squad car. *Id.* at 167–68, 94 S.Ct. 988. After he was placed in the car, the police officers went to the door of his home and asked a co-tenant for permission to enter and search the home. *Id.* at 167, 94 S.Ct. 988. The co-tenant agreed. *Id.*

[¶ 14] Because Matlock was sitting in the police car when consent to search was requested and received from his fellow occupant, *Matlock*, like Hurt in this case, was not invited or able to take part in any colloquy at the door. The Court held the evidence gathered during the consent search was valid against Matlock and provided: "the consent of one who possesses common authority over premises or effects is valid against the absent, nonconsenting person with whom that authority is shared." *Matlock*, at 170, 94 S.Ct. 988. The *Randolph* Court did not overrule the holding in *Matlock*. *Randolph*, at 121, 126 S.Ct. 1515 (providing the *Matlock* holding is not "undercut" by the Court's decision in *Randolph*, and there is a "fine line" to be drawn between the objector who "is in fact at the door" and refuses consent and a "potential objector, nearby but not invited to take part in the threshold colloquy"). *Randolph* clarified the extent to which a co-occupant's consent affects the admissibility of evidence against a physically present co-tenant who objects to the search at the door. *Randolph*, at 120, 126 S.Ct. 1515 ("We therefore hold that a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to police by another resident.").

[¶ 15] *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), was also noted and discussed by the *Randolph* Court because *Rodriguez*, like *Matlock*, established the facts under which the *Randolph* rule would not apply. In *Rodriguez*, police were called to the residence of Dorothy Jackson and were met by Jackson and her daughter, Gail Fischer, who showed signs of a severe beating. 497 U.S. at 179, 110 S.Ct. 2793. Fischer told the police Edward Rodriguez had assaulted her. *Id.* She also told the police

Rodriguez was asleep at his apartment, and she consented to travel with the police to the apartment so the officers could conduct a search, telling police she was Rodriguez's girlfriend and had a key to and stayed at the apartment. *Id.*

[¶ 16] The police traveled to the apartment with Fischer, who unlocked the door and gave the officers permission to search. *Id.* at 180, 110 S.Ct. 2793. The police did not attempt to secure either an arrest or search warrant before entering Rodriguez's apartment. *Id.* After the police entered, they went to the living room and saw in plain view drug paraphernalia and white powder in containers, which they believed to be cocaine. *Id.* The police continued to search and went to the bedroom of the home, where they found Rodriguez asleep and saw more containers with white powder. *Id.* Rodriguez was arrested, and the officers seized the paraphernalia and cocaine. *Id.* Rodriguez was charged with possession of a controlled substance with intent to deliver. *Id.* Before trial, he moved to suppress the evidence derived from the consent search permitted by his girlfriend, Fischer, arguing she did not have the actual authority to consent to the search because she had moved out of the home weeks earlier. *Id.* The district court granted the motion to suppress and the Appellate Court of Illinois affirmed after the State appealed. *Id.* The Illinois Supreme Court denied leave to appeal, and the United States Supreme Court granted certiorari. *Id.* at 180–81, 110 S.Ct. 2793. The United States Supreme Court reversed, holding the search was not unconstitutional if the officers reasonably, but erroneously, believed Fischer was, at the time of the search, a co-occupant with Rodriguez and would, therefore, have had authority to consent to a search of the common areas of the home. *Id.* at 186, 110 S.Ct. 2793.

[¶ 17] Hurt, like Rodriguez, was in the apartment when officers entered. Hurt, like Rodriguez, was unaware of the officers' presence until the officers had seen, in plain view, drug paraphernalia, and shortly thereafter placed him under arrest. Hurt, like Rodriguez, was not at the door to refuse consent when the police arrived, and therefore, under *Randolph*, both Rodriguez and Hurt "lose out" on their chance to assert their refusals:

> [I]f a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out.

*Randolph*, 547 U.S. at 121, 126 S.Ct. 1515 (refusing to "undercut" the holdings in *Matlock* and *Rodriguez*, by drawing a "fine line" between the nonconsenting, uninvited potential objectors in those cases, and the express refusal of consent by a physically present co-occupant in *Randolph*).

[¶ 18] Hurt, unlike Randolph, was not at the door and did not object or deny consent to search. Therefore, the rule in *Randolph* would not require the suppression of evidence against him, because his roommate "consented" to the search under paragraph 16 of her probation conditions in Hurt's absence. *See State v. Krous*, 2004 ND 136, ¶¶ 2, 19, 681 N.W.2d 822 (finding that a probation clause stating the probationer must "submit to search of her ... place of residence by any probation officer at any time ... with or without a search warrant" amounted to the probationer's consent to warrantless searches without request for consent by the probation officers). Thus, evidence obtained in this warrantless consent search would fall under *Rodriguez* and *Matlock*, rather than *Randolph*.

[¶ 19] We find no authority that would create an exception for third-party co-occupant consent derived from probation clauses. *See State v. Yule*, 905 So.2d 251, 264 (Fla.App.2d 2005) (Canady, J., concurring) ("The fact that a probationer shares a residence with another does not nullify the authority of probation and law enforcement officers to conduct a properly justified warrantless search of the probationer's shared residence. A person choosing to live in the same home with another who is subject as a probationer to warrantless searches has a corresponding diminished expectation of privacy."); *People v. Pleasant*, 123 Cal.App.4th 194, 19 Cal.Rptr.3d 796, 798 (2004) ("Persons who live with probationers cannot reasonably expect privacy in areas of a residence that they share with probationers.... Since [co-occupant] gave a search waiver as a condition of probation, law enforcement authorities could, without a warrant or probable cause, search areas used exclusively by [the probationer], areas within 'common authority' [ ] of the probationer and fellow occupants and areas which she 'normally had access.'"); *United States v. Crew*, 345 F.Supp.2d 1264, 1266 (D.Utah 2004) ("When the parolee, as a cohabitant of premises, gives consent to enter and to search, that consent is valid as to his personal space and all common space."); *State v. West*, 185 Wis.2d 68, 517 N.W.2d 482, 491 (1994) (stating that a "parole search may extend to all parts of the premises to which the probationer or parolee has common authority, just as if it were a consent search"); *State v. Johnson*, 748 P.2d 1069, 1073 (Utah 1987), *abrogated on other grounds by State v. Doporto*, 935 P.2d 484 (Utah 1997) ("A warrantless search of a parolee may result in an invasion of privacy, at least to some extent, for those living with the parolee."). Those who voluntarily choose to live with probationers, like any other voluntary co-occupant living ar-

rangement, assume the risk they will have diminished their Fourth Amendment rights. *See, e.g., Randolph,* 547 U.S. at 110, 126 S.Ct. 1515 (quoting *Matlock,* 415 at 171, n. 7, 94 S.Ct. 988) ("[T]hird-party consent ... rests [ ] on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."); *Yule,* 905 So.2d at 264 (Canady, J., concurring) ("A person choosing to live in the same home with another who is subject as a probationer to warrantless searches has a corresponding diminished expectation of privacy.").

[¶ 20] Hurt voluntarily chose to live with Bickler. We see no reason to treat Bickler's consent, albeit in the form of a probation term, differently from the verbal consent that could be given by any other co-occupant. The co-occupant consent-to-search exception to the warrant requirement applies in this case, and as such, the district court properly found the search of the common areas of Hurt's apartment was not unconstitutional.

[¶ 21] We affirm the criminal judgment.

[¶ 22] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.