Filed 9/21/10 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2010 ND 184

State of North Dakota, Plaintiff and Appellee

v.

Stephen Paul Adams, Defendant and Appellant

No. 20090383

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Frank L. Racek, Judge.

AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

Gary E. Euren, Assistant State’s Attorney, Courthouse, P.O. Box 2806, Fargo, N.D. 58108-2806, for plaintiff and appellee; submitted on brief.

Mark T. Blumer, 341 Central Avenue North, Suite 3, P.O. Box 475, Valley City, N.D. 58072, for defendant and appellant; submitted on brief.

State v. Adams

No. 20090383

Sandstrom, Justice.

[¶1] Stephen Adams appeals a district court order denying his motion to suppress evidence and a criminal judgment convicting him of possession of drug paraphernalia and possession of marijuana with intent to deliver or manufacture.  We affirm.

 

I

[¶2] In July 2008, after receiving a tip about drugs at a Fargo apartment, police officers conducted a probation search at the apartment, which was occupied by the probationer and Adams.  One of the probationer’s conditions of probation was that she would “submit [her] person, place of residence and vehicle, or any other property to which [she] may have access, to search and seizure at any time of day or night by a parole/probation officer, with or without a search warrant.”  The officers entered the apartment, spoke with the probationer in the living room, and then entered the bedroom, where they saw Adams.  Adams told the officers he had just smoked a “blunt” in the bathroom.  One of the officers handcuffed Adams and brought him into the living room.  The officer read the probationer and Adams their rights under 
Miranda v. Arizona
, 384 U.S. 436 (1966), and questioned them.  Adams told the officers there was marijuana in a dresser in the bedroom.  The officers found nineteen grams of marijuana and $667 cash in the dresser and also saw a locked safe in the bedroom.  The officers asked for the combination.  They did not ask to whom the safe belonged.  Adams softly stated some numbers, but he would not repeat them.  The officers told Adams that if he did not repeat the numbers, they would forcibly open the safe.  The officers pried open the safe with a screwdriver and hammer, which took ten to fifteen minutes to accomplish.  The officers found three bags of marijuana (each weighing over an ounce), title to a vehicle belonging to Adams, a gun box, $1200 cash, and ammunition.  Adams stated the items were his.

[¶3] Adams was charged with possession of drug paraphernalia and possession of marijuana with intent to deliver or manufacture.  He moved to suppress the evidence found in the safe, arguing the search of the safe was conducted in an unreasonable manner.  The district court denied Adams’ motion, concluding the search was a valid search incident to arrest and, in the alternative, a reasonable probation search with the probationer’s consent.

[¶4] Adams entered a conditional plea of guilty, but he was not sentenced and no judgment of conviction was entered.  He appealed from the order of conditional plea.  We dismissed the appeal because no judgment of conviction or final order had been entered.  
See
 
State v. Adams
, 2009 ND 168, 772 N.W.2d 878.

[¶5] A change of plea and sentencing hearing was held.  Adams entered a conditional plea of guilty and was sentenced.  A criminal judgment and commitment was entered.  Adams appeals the order denying his motion to suppress and the criminal judgment.

[¶6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06.  The appeal was timely under N.D.R.App.P. 4(b).  This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29-28-06.

 

II

[¶7] When reviewing a district court’s decision on a suppression motion, we apply a deferential standard of review and defer to the district court’s findings of fact.  
State v. Olson
, 2007 ND 40, ¶ 7, 729 N.W.2d 132.  Conflicts in testimony are resolved in favor of affirmance, because the district court is in a superior position to assess credibility of witnesses and to weigh the evidence.  
City of Fargo v. Thompson
, 520 N.W.2d 578, 581 (N.D. 1994).  Generally, a district court’s decision to deny a suppression motion will not be reversed if there is sufficient competent evidence capable of supporting the district court’s findings and if its decision is not contrary to the manifest weight of the evidence.  
Id.
  Questions of law are fully reviewable on appeal.  
Olson
, 2007 ND 40, ¶ 7, 729 N.W.2d 132.

[¶8] Adams and the State stipulated to the basic facts before the district court.  The district court had to analyze the facts to determine whether the search under those circumstances was reasonable.  In 
State v. LaFromboise
, 542 N.W.2d 110 (N.D. 1996), we reviewed the district’s court’s determination of the reasonableness of the manner of a probation search under a deferential standard.  542 N.W.2d at 114 (“The trial court found nothing unreasonable about the length or extent of the search under the circumstances, and neither do we. . . . We conclude there is sufficient competent evidence to support the trial court’s findings.  The manner, intensity, and scope of the search were not unreasonable.”).

[¶9] On appeal, Adams argues:  1) the district court erred in concluding the search of the residence was a reasonable probation search; and 2) the district court erred in concluding the search of the safe was a proper search incident to arrest.

 

A

[¶10] Adams argues the district court erred in concluding the search of the safe was a reasonable probation search.

[¶11] The Fourth Amendment to the U.S. Constitution, enforceable against the States by the Fourteenth Amendment, protects the “right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures.”  U.S. Const. amend. IV; U.S. Const. amend. XIV; 
see also
 
State v. Hurt
, 2007 ND 192, ¶ 6, 743 N.W.2d 102.  Generally, a search by law enforcement must be accompanied by a warrant.  
Hurt
, at ¶ 6.  “If, however, the entry and search fall within a recognized exception to the warrant rule, the search may be constitutionally permissible.”  
Id.

[¶12] This Court has upheld warrantless probationary searches when the conditions of probation include a condition such as that in N.D.C.C. § 12.1-32-07(4)(n) (“Submit the defendant’s person, place of residence, or vehicle to search and seizure by a probation officer at any time of the day or night, with or without a search warrant.”).  
See
 
State v. Krous
, 2004 ND 136, ¶ 19, 681 N.W.2d 822; 
State v. Schlosser
, 202 N.W.2d 136, 139 (N.D. 1972).  A probationer’s Fourth Amendment rights are limited by his status as a probationer.  
See
 
Krous
, at ¶ 16; 
Schlosser
, at 139.  “Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled.”  
U.S. v. Knights
, 534 U.S. 112, 119 (2001) (quotations omitted).  “Just as other punishments . . . curtail an offender’s freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens.”  
Id.
  We have held that those, such as Adams, who voluntarily choose to live with probationers assume the risk that they too will have diminished Fourth Amendment rights in areas shared with the probationer.  
Hurt
, 2007 ND 192, ¶ 19, 743 N.W.2d 102.  The fact that a probationer shares a residence does not nullify the authority to conduct a warrantless search of the probationer’s property.  
Id.

[¶13] Here, prior to the search, the police officers did not ask to whom the safe belonged.  The safe was located in the bedroom, which Adams does not dispute was a common area to which the probationer had access.  Adams does, however, dispute that the probationer had access to the safe itself.  The stipulated facts state that Adams did not state the safe belonged to him at the time of the search, although he did state the items found inside were his after the safe was opened.  The record does not reflect that the probationer at any point told the officers that she either did or did not have access to the safe.  The district court’s decision that the safe was searched on the basis of Adams’ roommate’s probationary status is not contrary to the manifest weight of the evidence.  A reasonable officer could believe both residents of a household have access to a safe located in a shared bedroom.  Under the probationer’s warrantless search condition, officers could, without a warrant or probable cause, search areas used exclusively by the probationer, areas within the “common authority” of the probationer and Adams, and areas to which the probationer “normally had access.”  
See
 
Hurt
, 2007 ND 192, ¶ 19, 743 N.W.2d 102 (quoting 
People v. Pleasant
, 19 Cal. Rptr. 3d 796, 798 (Cal. Ct. App. 2004)).

[¶14] Adams next contends the search of the safe was unreasonable because the safe was destroyed in the process of being opened.  “Any search conducted under a condition of probation must be conducted in a reasonable manner.”  
Krous
, 2004 ND 136, ¶ 21, 681 N.W.2d 822.  “The terms of the condition do not authorize searches conducted in an unreasonable manner.”  
Id.
  In 
State v. Odom
, 2006 ND 209, ¶ 16, 722 N.W.2d 370, we noted general consent to a search does not include permission to inflict intentional damage to the places or things searched.  Similarly, the U.S. Supreme Court, in 
Florida v. Jimeno
, 500 U.S. 248, 251-52 (1991), stated, “It is very likely unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk, but it is otherwise with respect to a closed paper bag.”  
Odom
 and 
Jimeno
, however, involved verbal consent searches, not probation searches.  A voluntary consent analysis does not apply here.  The search of the apartment was not authorized by the defendant’s free will, nor was it subject to his limits and approval.

[¶15] The consent to search the apartment and its permissible limits were established by law through the probation terms.  This entails analysis different from an ordinary consent search.  While we stated in 
Hurt
 that we saw no reason to treat a co-occupant’s “consent, albeit in the form of a probation term, differently from the verbal consent that could be given by any other co-occupant,” 
see
 
Hurt
, 2007 ND 192, ¶ 20, 743 N.W.2d 102, verbal consent searches and probation searches differ.  What may be considered outside the scope of general consent and thus an unreasonable search may be considered reasonable under the terms of a court-

ordered condition allowing for the warrantless search of a probationer.  
See, e.g.
, 21A Am. Jur. 2d 
Criminal Law
 § 849 (2008) (“[T]he standards for a reasonable search of a probationer are much less than those of an ordinary citizen.”).  In other states, courts have upheld probation searches that involved the warrantless opening of locked items.  
See, e.g.,
 
Anderson v. State
, 666 S.E.2d 70 (Ga. Ct. App. 2008) (upholding probation search during which officers brought a locked safe to the sheriff’s department and opened it without a warrant, because the safe was part of the appellant’s residence and effects and thus subject to search under the terms of his probation); 
State v. Walker
, 158 P.3d 220 (Ariz. Ct. App. 2007) (upholding warrantless search, during which officers cut off the lock on a trunk found in an area defendant shared with probationer, as a valid probation search).  The touchstone of the Fourth Amendment is reasonableness, which is assessed by balancing the degree to which a search intrudes on an individual’s privacy with the degree to which a search is needed for the promotion of legitimate governmental interests.  
U.S. v. Knights
, 534 U.S. 112, 118-19 (2001).  An individual’s status as a probationer subject to a search condition informs both sides of that balance.  
Id.

[¶16] Border searches provide some guidance as to the reasonableness of the search here.  This is another area that carries a lessened expectation of privacy under the Fourth Amendment, and courts have upheld some interference with property as reasonable.  
See
 
U.S. v. Flores-Montano
, 541 U.S. 149, 155-56 (2004) (while some searches of property are so destructive as to require more than suspicionless inspection, the fifteen- to twenty-minute procedure of removal, disassembly, and reassembly of a vehicle’s gas tank at the border was not) (border searches carried out in a “particularly offensive manner” might be deemed unreasonable); 
U.S. v. Lawson
, 374 F. Supp. 2d 513, 521 (E.D.Ky. 2005) (search during which customs officer cut three-inch slit in suitcase’s inner lining and drilled small hole in its rail was not particularly offensive or destructive so as to be unreasonable), 
aff’d
, 461 F.3d 697 (6th Cir. 2006).

[¶17] Adams voluntarily chose to live with a probationer, and he assumed the risk that he too would have diminished Fourth Amendment rights in areas shared with her.  
See
 
Hurt
, 2007 ND 192, ¶ 19, 743 N.W.2d 102.  Because of the terms of her probation, the probationer and Adams had a lessened expectation of privacy in their dwelling and shared possessions.  Breaking open the safe may have been outside the scope of general consent and thus unreasonable in a consent search.  
See
 
Odom
, 2006 ND 209, ¶ 16, 722 N.W.2d 370 (“General consent ‘to search does not include permission to inflict intentional damage to the places or things to be searched.’”).  The standards for a reasonable probation search under a court-ordered warrantless search condition, however, are less than those for an ordinary consent search.  The consent for the search in this case arose by operation of law, through the probation order.  We hold that searching locked boxes reasonably accessible by law enforcement is within the scope of this statutory consent.  The safe was opened within ten to fifteen minutes using common household tools.  To conclude the search was unreasonable would give probationers the ability to effectively render warrantless probation searches meaningless, because probationers could avoid warrantless searches merely by securing items in a locked box.

 

B

[¶18] Because the district court did not err in concluding the search was reasonable under the terms of Adams’ roommate’s probation, it is unnecessary to reach Adams’ argument that the district court erred in concluding the search of the safe was a proper search incident to arrest.

 

III

[¶19] The district court order denying Adams’ motion to suppress evidence and the criminal judgment convicting him of possession of drug paraphernalia and possession of marijuana with intent to deliver or manufacture are affirmed.

[¶20] Dale V. Sandstrom

Daniel J. Crothers

Gerald W. VandeWalle, C.J.

Kapsner, Justice, dissenting.

[¶21] I respectfully dissent.

[¶22] We recognized the potential for abuse by an officer with the authority to search pursuant to probation conditions in 
State v. Krous
, 2004 ND 136, ¶ 21, 681 N.W.2d 822.  We stated, “[a]ny search conducted under a condition of probation must be conducted in a reasonable manner.  U.S. Const. Amend. IV.  The terms of the condition do not authorize searches conducted in an unreasonable manner.”  
Id.
  The safe in this case was destroyed and is now unusable, yet the majority holds this manner of search was reasonable.  I disagree.

[¶23] The majority cites 
State v. Walker
 and 
Anderson v. State
 as supporting the reasonableness of breaking into the safe.  The defendant in 
Walker
 did not contest the reasonableness of destroying the lock.  
See
 158 P.3d 220, 222, 225 (Ariz. Ct. App. 2007).  The appeal in 
Anderson
 was based upon the defendant’s contention the safe was not in a common area and did not belong to him.  
See
 666 S.E.2d 70, 72 (Ga. Ct. App. 2008).  These cases do not discuss the reasonableness of breaking into the locked containers and destroying them in the process.  These cases do not establish destruction of an object while being searched is reasonable under the Fourth Amendment.  Unlike 
Walker
 and 
Anderson
, Adams argues breaking into the safe was unreasonable, noting the damage to the safe.

[¶24] The United States Supreme Court has stated the “[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, . . . ” even if the search was otherwise proper.  
U.S. v. Ramirez
, 523 U.S. 65, 71 (1998).  The respondent in 
Ramirez
 challenged police officer’s “no-

knock” entry of his home, after police officers obtained a warrant to search his home for an escaped convict.  
Id.
 at 68-69.  In the process of executing the no-knock warrant, police officers broke a single window pane out of the respondent’s home in order to “dissuade any of the occupants from rushing to the weapons the officers believed might be in the garage.”  
Id.
 at 69.  The Supreme Court decided the police officer’s actions in breaking out a single window to prevent an occupant from reaching weapons was not excessive or unnecessary and satisfied the general touchstone of reasonableness required by the Fourth Amendment.  
Id.
 at 71-72.  The Supreme Court noted, if the Fourth Amendment had been violated because of excessive or unnecessary destruction of property, then the Court likely would have examined whether there was a sufficient causal relationship between the destruction and discovery of evidence to warrant suppression of evidence.  
Id.
 at 72 n.3.

[¶25] In 
Ramirez
, breaking the window pane was reasonable because there were exigent circumstances justifying that method of search.  Exigent circumstances may make warrantless searches reasonable.  
Hoover v. Director, N.D. Dep’t of Transp.
, 2008 ND 87, ¶ 15, 748 N.W.2d 730 (citing 
City of Fargo v. Lee
, 1998 ND 126, ¶¶ 9-

10, 580 N.W.2d 580).  Exigent circumstances exist in “an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence.”  
Id.
 (quoting 
State v. Matthews
, 2003 ND 108, ¶ 14, 665 N.W.2d 28).  In this case, there were no exigent circumstances to justify destroying the safe.  The police officers could have safely sought a warrant to search the safe.  Destroying the safe was therefore unnecessary and done in an excessive manner.  Further, there is a direct causal relationship between the destruction of the safe and the evidence seized, and that evidence should have been suppressed.

[¶26] The majority decides the search was conducted in a reasonable manner because a search pursuant to probation conditions is similar to a search at an international border.  There is no authority to support this comparison and the majority cites none.  Further, the rationale behind the standards for searches at international borders is not the same rationale behind probationary searches.  
See
 
Krous
, 2004 ND 136, ¶ 16, 681 N.W.2d 822 (citing 
State v. Schlosser
, 202 N.W.2d 136, 137-39 (N.D. 1972)).

[¶27] Searches conducted at international borders allow a greater degree of intrusion because of the interests involved:

The Government’s interest in preventing the entry of unwanted persons and effects is at its zenith at the international border.  Time and again, we have stated that “searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border.”  Congress, since the beginning of our Government, “has granted the Executive plenary authority to conduct routine searches and seizures at the border, without probable cause or a warrant, in order to regulate the collection of duties and to prevent the introduction of contraband into this country.”  The modern statute that authorized the search in [
U.S. v. Flores-Montano
, 541 U.S. 149 (2004)], derived from a statute passed by the First Congress, and reflects the “impressive historical pedigree” of the Government’s power and interest.  It is axiomatic that the United States, as sovereign, has the inherent authority to protect, and a paramount interest in protecting, its territorial integrity.

Flores-Montano
, 541 U.S. at 152-53 (citations omitted).  In 
Flores-Montano
, the Supreme Court specifically noted “the expectation of privacy is less at the border than it is in the interior.”  
Id.
 at 154.

[¶28] There is no similar historical pedigree condoning the destruction of property during warrantless probation searches where there is no suggestion of danger or other exigencies.  Indeed, there is no longstanding historical pedigree recognizing the constitutionality of warrantless probation searches.  
See
 
Samson v. California
, 547 U.S. 843 (2006); 
U.S. v. Knights
, 534 U.S. 112 (2001).  In 
Knights
, the Supreme Court held a warrantless search of a probationer’s apartment, supported by reasonable suspicion and authorized as a condition of his probation, was reasonable under the Fourth Amendment.  534 U.S. at 122.  The Court, however, specifically declined to decide whether the probation condition would alone support the search.  
Id.
 at 120 n.6.  In 2006, the 
Samson
 Court held that a suspicionless search of a parolee, conducted under statutory authority, was reasonable under the Fourth Amendment, noting that “parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment.”  
Samson
, 547 U.S. at 850.  In both 
Knights
 and 
Samson
, the Supreme Court engaged in a “balancing” analysis, which is omitted from the majority opinion in this case.  534 U.S. at 121; 547 U.S. at 849-52.  The analogy to international border searches is problematic.

[¶29] The majority cites 
Flores-Montano
 to support its conclusion that destruction of property is a reasonable manner of search.  Even where governmental interests are at their “zenith” in a border search, see 
Flores-Montano
, 541 U.S. at 152, destruction of property to the point the property becomes unusable is not automatically reasonable.  In 
Flores-Montano
, the U.S. Supreme Court upheld the disassembly and reassembly of a gas tank at an international border.  
Id.
 at 155-56.  The Supreme Court noted Flores-Montano presented no evidence concerning possible permanent damage or destruction to his property.  
Id.
 at 155.  Further, the Supreme Court stated “it may be true that some searches of property are so destructive as to require a different result, . . . ” after the Court determined the search in question was not destructive enough to be unreasonable.  
Id.
 at 155-56.

[¶30] The majority also cites 
U.S. v. Lawson
, where a federal district court determined “the cutting of the skin of [the defendant-appellant’s] bag and the drilling of the suitcase rail” was not unreasonable because it was not done in a “particularly offensive or destructive manner.”  374 F. Supp. 2d 513, 518, 521 (E.D. Ky. 2005), 
aff’d
 461 F.3d 697 (6th Cir. 2006).  The federal district court noted the suitcase was still usable, the cut was not visible once the suitcase was zipped shut, the drilled hole was small and could easily be covered, and the function of the suitcase was not interfered with.  
Id.
 at 521-22.  Adams’s safe was permanently destroyed.

[¶31] The majority states:  “To conclude the search was unreasonable would give probationers the ability to effectively render warrantless probation searches meaningless, because probationers could avoid warrantless searches merely by securing items in a locked box.”  Majority opinion, at ¶ 17.  This is a fallacy.  The probationer in the house was subject to probation conditions which required her to “submit your person, place of residence and vehicle, or any other property to which you may have access, to search and seizure at any time of day or night by a parole/probation officer, with or without a search warrant.”  If the probationer had access to the safe, she was required to permit the search of the safe.  A violation of this requirement is cause for a revocation of her probation under N.D.C.C. § 12.1-32-

07.  To the extent the majority wants to justify this result by concerns for probationers, there are explicit statutory remedies for probation violations.  
See
 N.D.C.C. §§ 12.1-32-06.1; 12.1-32-07.  To the extent the ultimate concern is the reasonableness of this search, the circumstances found by the trial court do not justify the destruction of property.

[¶32] In 2001, the U.S. Supreme Court held that a warrantless search of a probationer’s apartment supported by reasonable suspicion and authorized as a condition of probation, was reasonable under the Fourth Amendment.  
Knights
, 534 U.S. at 122.  The Court stated:

The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined “by assessing, on the one hand, the degree to which it intrudes upon an individual’s privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.”

Id.
 at 118-19 (quoting 
Wyoming v. Houghton
, 526 U.S. 295, 300 (1999)).

[¶33] The majority does not balance the state’s interests against Adams’s expectation of privacy in his property.  The result of the majority opinion is that, by living with a probationer, a person may be subjected to the destruction of his property during a warrantless search even though there is no suggestion on this record that the officers were in danger, that the evidence in the safe would disappear, or that there were other impediments to getting a warrant.

[¶34] The conditions of probation justify the officers’ presence in the apartment.  The conditions of probation justify reasonably searching anything to which the probationer had access.  They do not justify short-circuiting the usual Fourth Amendment analysis regarding the co-occupant’s rights.  I believe that is what the majority has done because convenience or expediency is all that justifies destruction of the safe without obtaining a warrant and, if that were enough, the warrant requirement would be eliminated.  The destruction of the safe without obtaining a warrant was unreasonable.  The evidence from the safe should have been suppressed.

[¶35] Carol Ronning Kapsner

Mary Muehlen Maring