Filed 1/14/16 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2016 ND 8

State of North Dakota, Plaintiff and Appellee

v.

Jeremy Ballard, Defendant and Appellant

No. 20140333

Appeal from the District Court of Divide County, Northwest Judicial District, the Honorable Paul W. Jacobson, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Crothers, Justice.

Seymour R. Jordan, Divide County State’s Attorney, 300 North Main Street, P.O. Box 84, Crosby, N.D. 58730-0084, for plaintiff and appellee.

Elizabeth L. Pendlay, 206 North Main Street, P.O. Box 289, Crosby, N.D. 58730-0289, for defendant and appellant.

State v. Ballard

No. 20140333

Crothers, Justice.

[¶1] Jeremy Ballard appeals a district court judgment after he conditionally pled guilty to drug charges, reserving the right to challenge the denial of his motion to suppress evidence.  He argues the district court should have suppressed evidence from his residence because the suspicionless probationary search violated his constitutional rights against unreasonable searches and seizures.  We reverse because the suspicionless search of an unsupervised probationer’s home was unreasonable under the Fourth Amendment of the United States Constitution.

I

[¶2] In October 2013 Ballard pleaded guilty to several misdemeanor drug crimes.  He was sentenced concurrently on each charge to 30 days incarceration, with 30 days suspended and two years unsupervised probation.  One probation condition was that  Ballard “submit to a search of his person, place and vehicle at the request of law enforcement without a warrant.”  Another required him to “submit to random drug-

testing without a warrant or probable cause, including but not limited to, urine analysis.” 

[¶3] On March 28, 2014, around 7:30 p.m., a Divide County deputy sheriff saw  Ballard driving a car with two passengers in Noonan, North Dakota.  The deputy was aware Ballard and a passenger were on unsupervised probation and were subject to random drug test and search clauses as part of their probation.  For these reasons alone, the deputy stopped Ballard’s car.  The deputy testified at the preliminary hearing that he stopped Ballard for the sole reason of performing a probation search and that he did not have any “reasonable articulabl[e] suspicion” of any drug-related or criminal activity when he made the stop.  After the deputy activated his emergency lights, Ballard pulled over in front of his residence.  The deputy testified he spoke with the individuals briefly before asking Ballard to get out of the vehicle so he could perform a pat-down search.  The search did not yield any contraband.

[¶4] The deputy next entered Ballard’s home without consent or a warrant.  The deputy testified he was aware the house where Ballard lived was owned by a third person.  After confirming Ballard lived at the residence, the deputy searched Ballard’s bedroom and found methamphetamine paraphernalia and a bag of a “clear crystalline substance” which later was confirmed by the state crime lab to be 0.41 grams of methamphetamine.  Ballard was arrested and charged with possession of methamphetamine, a class C felony, and possession of paraphernalia, a class C felony.

[¶5] In July 2014 Ballard moved to suppress the evidence found in the search of his bedroom and to dismiss the charges against him, arguing the State failed to demonstrate it had reasonable suspicion for a probationary search.  At the September 2014 hearing on the motion to suppress, neither party called witnesses; instead, they stipulated to the facts and testimony presented at the preliminary hearing.  At the conclusion of the hearing, the district court denied Ballard’s suppression motion, stating:

“Well, what I do find factually is the facts are as testified to by Deputy Hubble, as reflected in the brief of the Defendant.  And the conclusions that I draw from that testimony, that evidence, is that the search that was being conducted was a suspicionless probationary search done pursuant to the probation that Mr. Ballard was under.  And I concluded from also that information that the search was not done in an intimidating or harassing fashion.  It was done by a police officer, who I understand under our case law can conduct . . . probationary searches.

“And therefore my reading of the 
Maurstad
 case and what it said about the U.S. Supreme Court 
Knights
 case, is that 
Maurstad
 is not precedent for this kind of search.  And essentially where our state of the law is in North Dakota, as I understand it, is what the Court had previously said in the 
Perbix
 case still applies, other than the Court does not take into consideration the motive for the search which I think was the only thing overruled in 
Perbix
.  And therefore I will deny the Suppression Motion.”

The district court issued a written order denying Ballard’s motion to suppress and dismiss charges.  Ballard entered a conditional guilty plea, reserving the right to appeal the district court’s denial of his motion to suppress the evidence seized.

II

[¶6] “A trial court’s disposition of a motion to suppress will not be reversed if, after conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court’s findings, and the decision is not contrary to the manifest weight of the evidence.”  
State v. LaFromboise
, 542 N.W.2d 110, 112 (N.D. 1996).  Questions of law are fully reviewable.  
State v. Adams
, 2010 ND 184, ¶ 7, 788 N.W.2d 619.  “Whether a violation of the constitutional prohibition against unreasonable searches and seizures has occurred is a question of law.”  
State v. Maurstad
, 2002 ND 121, ¶ 11, 647 N.W.2d 688 (citing 
LaFromboise
, at 112).

A

[¶7] Ballard argues the district court erred in denying his motion to suppress the evidence found during the suspicionless probationary search of his residence.  Ballard claims the district court’s order denying his motion to suppress evidence and the criminal judgment should be reversed and he should be permitted to withdraw his conditional guilty plea.  We agree.

[¶8] The Fourth Amendment to the United States Constitution and art. I, § 8, of the North Dakota Constitution protect individuals from unreasonable searches and seizures.  “When reviewing the constitutionality of probationary searches, we have interpreted the North Dakota Constitution to provide the same protections for probationers as provided by the United States Constitution.”  
Maurstad
, 2002 ND 121, ¶ 11, 647 N.W.2d 688, (citations omitted).  “[U]nder our general Fourth Amendment approach we examin[e] the totality of the circumstances to determine whether a search is reasonable within the meaning of the Fourth Amendment.”  
Samson v. California
, 547 U.S. 843, 848 (2006) (citation omitted) (quotation marks omitted).

[¶9] Ballard acknowledges probationary search clauses generally are permitted under N.D.C.C. § 12.1-32-07(4)(n).  But he claims the suspicionless search of his residence under the statute does not pass Fourth Amendment muster.  His argument calls for examination of North Dakota’s cases on probationary searches and the traditional Fourth Amendment analysis required by 
United States v. Knights
, 534 U.S. 112 (2001), and 
Samson
, 547 U.S. 843, balancing the State’s interest against an unsupervised probationer’s liberty interests and expectations of privacy.  When we do so, it becomes apparent that our precedent relies on a formulation of a legal test from the 1970’s that is no longer good law.

[¶10] In 
State v. Schlosser
, 202 N.W.2d 136 (N.D. 1972), the defendant was a supervised probationer who appealed revocation of his deferred imposition of sentence.  He claimed evidence obtained during a warrantless probationary search should be suppressed because the search was unconstitutional.  The underlying facts were that Schlosser plead guilty to possession of marijuana and received a deferred imposition of sentence.  
Id.
 at 136-37.  One condition of deferring imposition was “that he consent to his parole officer or other law enforcement officers to search his home, property or person at any time without a search warrant.”  
Id.
 at 137.  Schlosser subsequently was arrested for possession of marijuana and, that same day, his probation officer and two law enforcement officers searched his apartment and seized additional drugs.  
Id.

[¶11] In determining whether Schlosser’s status as a probationer affected his Fourth Amendment rights, this Court examined United States Supreme Court and California cases and made two conclusions.  First, a “defendant’s status as a probationer does affect his rights under the Fourth Amendment.  The court has a responsibility to regulate a probationer’s activities to help in his rehabilitation and at the same time to guard against continued criminal behavior.”  
Schlosser
, 202 N.W.2d at 139.  Under this rationale, the North Dakota Supreme Court applied a test of the reasonableness of a search clause, stating:

“The test applied by the court was that laid down in 
People v. Dominguez
, 256 Cal.App.2d 623, 64 Cal.Rptr. 290, 293 (1967):

‘A condition of probation which (1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality does not serve the statutory ends of probation and is invalid.’

“Applying this rule in reverse, [
Schlosser’s
 search] clause (3)(g) is a reasonable and valid exercise of the court’s authority under Section 12-

-53-13, N.D.C.C.”

Id.
 at 139.

[¶12] The 
Schlosser
 Court’s second conclusion was that “the search and seizure of the contraband from the defendant’s apartment by his parole officer without a search warrant was not unreasonable under the Fourth Amendment to the United States Constitution, and the contraband seized was admissible in a probation violation hearing.”  202 N.W.2d at 139.  Although the basis for this holding was not fully explained, the 
Schlosser
 Court apparently relied on another California holding that “a probationer who has been granted the privilege of probation on condition that he submit at any time to a warrantless search may have no reasonable expectation of traditional Fourth Amendment protection.”  
Id.

[¶13] This Court next decided 
State v. Perbix
, 331 N.W.2d 14 (N.D. 1983).  In 
Perbix
, the defendant was charged with possession of marijuana after a warrantless search conducted as a condition of supervised probation.  
Id.
 at 15-16.  The first issue raised was whether the Fourth Amendment permits law enforcement officers, rather than probation officers, to perform probationary searches when law enforcement relies on a court imposed probationary search clause.  
Id.
 at 17. This Court held probationary searches could be performed by law enforcement officers.  
Id.
 at 20.

[¶14] The second issue in 
Perbix
 was whether the probationary search clause violated the Fourth Amendment.  
Id.
 at 18.  The Fourth Amendment discussion started by noting, “Although the constitutional status of probationers has not been precisely delineated, case law clearly indicates that probationers are neither totally bereft of nor fully invested with constitutional protections.”  This Court applied the four-part test from 
Schlosser
 and held:

“We conclude that conditions of probation requiring the probationer to submit to warrantless searches by probation officers or law enforcement officers, to the extent such searches contribute to the rehabilitation process; are not used as a subterfuge for criminal investigations; and are performed in a reasonable manner, are valid and not violative of the Fourth Amendment.”

Perbix
, 331 N.W.2d at 21.
(footnote: 0)  
Perbix
 thus stated warrantless probation searches were valid under the Fourth Amendment if they (1) contributed to rehabilitation; (2) were not used as subterfuge for criminal investigations; and (3) were performed in a reasonable manner.  By using this formulation of the test, Fourth Amendment “reasonableness” was determined by applying the three factors.  As is explained below, this test is not consistent with current United States Supreme Court precedent.

[¶15] The Court in 
Perbix
 concluded:

“Because the search provision in the instant case related to Perbix’s prior criminal conduct, related to activity which is criminal in itself, and prohibited conduct which is reasonably related to future criminality under the test set forth in 
Schlosser
, 
supra
, the search provision and the resultant search, which was performed in a reasonable manner, did not violate the defendant’s Fourth Amendment rights.”

331 N.W.2d at 22.

[¶16] In 
State v. Vermilya
, 395 N.W.2d 151 (N.D. 1986), the defendant appealed from an order denying suppression of evidence seized by a North Dakota probation officer under authority of probationary conditions imposed in Montana.  This Court held that the Montana probationary term required reasonable cause to search and that such cause existed.  
Id.
 at 152.  This Court explained:

“In 
State v. Perbix
, 331 N.W.2d 14 (N.D.1983), we held that a ‘search clause,’ as a condition of probation, which provided that the probationer must allow a search of his person, place of residence, or motor vehicle without a search warrant and without probable cause, did not violate the probationer’s Fourth Amendment right against unreasonable searches and seizures.  We did not hold in 
Perbix
, 
supra
, that a search clause so restricting the probationer’s Fourth Amendment rights must be included by a trial court as a condition of probation, nor did we hold that a search of the probationer’s residence could be conducted without warrant or probable cause in the absence of such a clause.”

Vermilya
, 395 N.W.2d at 152.  The Court did not further discuss or explain the Fourth Amendment tests used in 
Schlosser
 or 
Perbix
.

[¶17] After 
Vermilya
, in 1987 the United States Supreme Court in 
Griffin v. Wisconsin
 affirmed a probation officer’s warrantless search of the supervised probationer’s home based on unsubstantiated information from a police detective.  483 U.S. 868, 871 (1987).  The search was deemed constitutional because of reasonable suspicion of misconduct found by the state court, and based on a “special need” and a valid state regulation governing probationers.  
Id.
 at 880.

[¶18] The 
Griffin
 opinion discusses the State’s interest in fostering the relationship between the probation officer and his “client” so that the public and the probationer are protected.  483 U.S. at 878-79.  It makes much of the fact that, unlike normal law enforcement, the probation officer was “an employee of the State Department of Health and Social Services who, while assuredly charged with protecting the public interest, is also supposed to have in mind the welfare of the probationer (who in the regulations is called a ‘client[.]’)”.  
Id.
 at 876 (citation omitted).  The Court justified departing from a probable cause standard, stating:

“[I]t is both unrealistic and destructive of the whole object of the continuing probation relationship to insist upon the same degree of demonstrable reliability of particular items of supporting data, and upon the same degree of certainty of violation, as is required in other contexts.  In some cases—especially those involving drugs or illegal weapons—the probation agency must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society.  The agency, moreover, must be able to proceed on the basis of its entire experience with the probationer, and to assess probabilities in the light of its knowledge of his life, character, and circumstances.”

Id.
 at 879.  The 
Griffin
 Court held, “In such a setting, we think it reasonable to dispense with the warrant requirement.”  
Id.
 at 877.  Important for purposes of the instant case is that the Wisconsin regulation in 
Griffin
 required “reasonable grounds” to search.  
Id.
 at 870-71.  Reasonable grounds existed and 
Griffin
 therefore sheds no light on the question whether Ballard could be subject to a suspicionless probationary search.

[¶19] 
State v. Raywalt
, 444 N.W.2d 688 (N.D. 1989), was decided next.  There, Raywalt argued the probationary search of the house at which he was a guest was a subterfuge for a criminal investigation and therefore invalid under 
Perbix
.  
Id.
 at 690.  This Court rejected the claim, holding the predominate purpose of the search was to determine whether Raywalt was complying with his conditions of probation.  
Id.
  Thus, “the search contributed to the rehabilitation process and was reasonable” so that the warrantless search did not violate Raywalt’s Fourth Amendment rights.  
Id.
  
Raywalt
 used the 
Perbix
 formulation of the legal test holding that the reasonable performance of the search, the contribution to the rehabilitative process and the fact a search is not a subterfuge for criminal investigation means the search is “valid and not violative of the Fourth Amendment.”  
State v. Raywalt
, 444 N.W.2d 688 (N.D. 1989).  But, as relevant to the case at bar, 
Raywalt
 provides no new guidance whether the Fourth Amendment is violated by a suspicionless search of an unsupervised probationer.

[¶20] In 
State v. Smith
, 1999 ND 9, 589 N.W.2d 546, the issue was whether reasonable suspicion was required prior to conducting a search of a supervised probationer.  
Id.
 at  ¶¶ 2, 9.  Smith argued 
Raywalt
 did not discuss 
Griffin
, and that 
Griffin
 requires that 
Perbix
 be overturned.  
Id.
 at ¶¶ 16, 17.  This Court took up both the 
Griffin
 “special need” language and the 
Schlosser
 and 
Perbix
 legal test on the way to concluding, “because the search of Smith’s home and car was performed in a reasonable manner, we conclude the search did not violate Smith’s Fourth Amendment rights[.]”  
Id.
 at ¶ 24.

[¶21] The 
Smith
 decision raises several concerns.  First, the Fourth Amendment holding in 
Smith
 is dicta because the case was decided on the basis that reasonable suspicion supported the search. 1999 ND 9, ¶¶ 18-19, 589 N.W.2d 546 (“
Griffin
 does not specifically require reasonable suspicion; it requires the search to be reasonable under a state’s statute on probationer searches . . . . While a valid probationary search need only be reasonable, the reasonable suspicion standard was met here.”).  Second, the 
Smith
 Court takes an incorrect cue from 
Griffin
, 
Schlosser
, 
Perbix
 and 
Raywalt
 by improperly equating the reasonableness of the search with constitutional reasonableness under the Fourth Amendment.  
Smith
, at ¶ 9 (“We hold the search did not violate the Fourth Amendment because ‘reasonable suspicion’ is not required for a probationary search as long as the search is reasonable.”); 
Id.
 at ¶ 18 (“
Griffin
 does not specifically require reasonable suspicion; it requires the search to be reasonable under a state’s statute on probationary searches.  Further, nothing in 
Griffin
 suggests the clear logic and holding in 
Perbix
 should be reversed.”).  This truncated test prevents use of the required traditional Fourth Amendment analysis.

[¶22] In 2001 the United States Supreme Court decided 
Knights
.  There, the Court held that a sheriff deputy’s warrantless search of a probationer’s home was constitutional when based on reasonable suspicion of unlawful activity.  534 U.S. at 114.  Doing so the Court mentioned, but did not use, the 
Griffin
 “special need” analysis and instead concluded a warrantless search of the probationer’s home “was reasonable under our general Fourth Amendment approach of ‘examining the totality of the circumstances.’” 
Id.
 at 118 (citation omitted).  Wholly absent was any mention of concern about diminishing a probationer’s Fourth Amendment protections out of the need to foster a relationship between the probation officer and a “client.”  Thus, the two justifications in 
Griffin
 for reducing a probationer’s Fourth Amendment protections were not used in 
Knights
.  The Court instead stated, “reasonableness of a search is determined ‘by assessing, on the one hand, the degree to which it intrudes upon an individual’s privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.’”  
Id.
 at 118-19.  The 
Knights
 Court described its legal test as “ordinary Fourth Amendment analysis that considers all the circumstances of a search.”  
Id.
 at 122.

[¶23] Shortly after 
Knights
, this Court decided 
State v. Maurstad
, 2002 ND 121, 647 N.W2d 688.  In 
Maurstad
, the supervised probationer argued the warrantless search was a subterfuge for law enforcement’s investigatory purpose and thus invalid.  
Id.
 at ¶ 12.  This Court rejected the claim, holding 
Knights
 utilized “ordinary Fourth Amendment analysis that considers all the circumstances of a search . . . .”  
Id.
 at ¶ 29 (quoting 
Knights
, 534 U.S. at 122).  The 
Maurstad
 Court stated, 

“We hold the alleged purpose of a probationary search is irrelevant to the determination of its validity, and overrule the portion of 
Perbix
 that requires the purpose of a probationary search be considered when deciding the validity of a probationary search.  We will no longer consider whether the search was conducted as a subterfuge for a criminal investigation.”

Id.
 at ¶ 31.

[¶24] Maurstad next claimed his probationary search must be based on reasonable suspicion to be valid.  
Id.
 at ¶ 23.  Using the 
Perbix
 formulation of the test, the 
Maurstad
 Court stated, 

“Since 
Perbix
, challenges to the validity of a probationary search authorized by a condition of probation have been reviewed under the standard of whether the search was reasonable, including whether the search was performed in a reasonable manner, whether the search was a subterfuge for criminal investigation, and whether the search contributed to the probationer’s rehabilitation.”

Id.
 at ¶ 18.  Specific to the Fourth Amendment, this Court stated 
Knights
 held a probationary search based on reasonable suspicion was constitutionally adequate, and Maurstad’s probation officer had reasonable suspicion that Maurstad was engaged in unlawful activity.  
Id.
 at ¶ 37.  This Court further noted, “Our decision is based on the probation officer’s reasonable suspicion coupled with the search condition of Maurstad’s probation, and we need not decide whether a suspicionless search would satisfy the Fourth Amendment.”  
Id.
 at ¶ 38.

[¶25] In 2006 the United States Supreme Court decided 
Samson v. California
, where a police officer stopped a parolee on the street based on the officer’s mistaken belief the parolee was subject to an outstanding warrant.  547 U.S. 843, 846 (2006).  The officer confirmed no warrant existed but nevertheless searched the probationer based solely on his status as a parolee and under state law permitting their searches and seizures with or without cause.  
Id.
 at 846-47.

[¶26] Like 
Knights
, the 
Samson
 Court ignored the 
Griffin
 “special need” line of thought and also failed to mention the need for relaxing Fourth Amendment standards to foster the relationship between a parolee and his supervising officer.  The 
Samson
 decision instead was confined to considering whether suspicionless searches of parolees passed muster under traditional Fourth Amendment analysis.  547 U.S. at 847.  The 
Samson
 Court performed its analysis based on the totality of the circumstances test used in 
Knights
.  
Id.
 at 848.  Importantly for our consideration, both the majority and dissenting opinions in 
Samson
 explained that probationers have expectations of privacy greater than a parolee’s or a prisoner’s expectation of privacy. 
Id.
 at 850.  (“As we noted in 
Knights
, parolees are on the ‘continuum’ of state-

imposed punishments.  On this continuum, parolees have fewer expectations of privacy than probationers . . . .”).

[¶27] 
Most recently, this Court decided 
State v. Gonzalez
, 2015 ND 106, ¶ 1, 862 N.W.2d 535, where a supervised probationer challenged the search of his cellular telephone.  This Court cited 
Maurstad
 for the legal proposition that “[w]hen a probationary search is authorized by a condition of probation and is supported by reasonable suspicion, the search is a valid probationary search and is reasonable under the Fourth Amendment.”  
Id.
 at ¶ 25.  We concluded, “Under the totality of the circumstances, Gonzalez’s probation officer had reasonable suspicion that Gonzalez was engaging in unlawful activity.  We conclude the probation search was supported by reasonable suspicion.”  
Id.
 at ¶ 27.  Importantly for the case before us, 
Gonzalez
 did not involve a suspicionless search of an unsupervised probationer.  Nor did Gonzalez cite to or argue that the United States Supreme Court decision in 
Samson
 required a different result or a reexamination of the legal analysis used in probationary search cases.

[¶28] Here, the State urges us to continue employing our constrictive view of the Fourth Amendment by which we looked at the constitutional reasonableness of the search through the 
Schlosser
 and 
Perbix
 lens of whether the search was performed in a reasonable manner.  However, that analysis effectively ignores the directive in 
Knights
 and 
Samson
 that we must employ traditional Fourth Amendment analysis to probationary search cases.

[¶29] The review of precedent from the United States Supreme Court and this Court  demonstrates that the use of traditional Fourth Amendment analysis in 
Knights
 and 
Samson
 was different than the legal justification in 
Griffin
.  
See
 Wayne R. LaFave, 
Search and Seizure
 § 10.10 (5th ed. 2012).  (Explaining that the Supreme Court’s shift from a “special needs” analysis in 
Griffin
 to a less-restrained “totality of the circumstances” balancing in 
Knights
 and 
Samson
 is “troublesome.”).  In 
Griffin
, the Court concluded, “Supervision, then, is a ‘special need’ of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large.  That permissible degree is not unlimited . . . .”  483 U.S. at 875.

[¶30] North Dakota mentioned the 
Griffin
 “special need” concept in 
Smith
 and 
Maurstad
, but our analysis was said to follow the 
Knights
 traditional Fourth Amendment calculus.  
Maurstad
, at ¶¶ 26, 33.  Under that holding, “The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual’s privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.”  
Knights
, 534 U.S. at 118-19 (internal quotation omitted).

[¶31] Applying this test, the 
Knights
 Court stated, “We hold that the balance of these considerations requires no more than reasonable suspicion to conduct a search of this probationer’s house.”  534 U.S. at 121.  “Although the Fourth Amendment ordinarily requires the degree of probability embodied in the term ‘probable cause,’ a lesser degree satisfies the Constitution when the balance of governmental . . . interests makes such a standard reasonable.”  
Id.
  The 
Knights
 Court concluded, “When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer’s significantly diminished privacy interest is reasonable.”  
Id.

[¶32] While the Court in 
Knights
 held reasonable suspicion rather than probable cause or a warrant allowed the house search, even for a supervised probationer the Court expressly did not authorize suspicionless searches.  To the contrary, the Court made clear “[w]e do not decide whether the probation condition so diminished, or completely eliminated, Knights’ reasonable expectation of privacy (or constituted consent) that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment.”  
Knights
, 534 U.S. at 120 n.6 (citation omitted).

[¶33] In 
Samson
, the Court started where 
Knights
 left off, stating,

“Because the search at issue in 
Knights
 was predicated on both the probation search condition and reasonable suspicion, we did not reach the question whether the search would have been reasonable under the Fourth Amendment had it been solely predicated upon the condition of probation.  Our attention is directed to that question today, albeit in the context of a parolee search.”

547 U.S. at 850 (citation omitted).  The Court ultimately “conclude[d] that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee.”  
Id.
 at 857.  Again, the Court did not reach the question whether a probationer, much less an unsupervised probationer, could be subjected to the same suspicionless search.

[¶34] The Fourth Amendment test for the “reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual’s privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.”  
Knights
, 534 U.S. at 118-19 (internal quotation omitted).  The Court in 
Samson
 explained that probationers have expectations of privacy greater than parolees or prisoners.  547 U.S. at 850.  (“As we noted in 
Knights
, parolees are on the ‘continuum’ of state-imposed punishments.  On this continuum, parolees have fewer expectations of privacy than probationers . . . .”) (citation omitted).

[¶35] Here, Ballard was an unsupervised probationer, not a parolee like 
Knights
.  Ballard’s status as a probationer informs both sides of the Fourth Amendment balancing test.  
See
 
Knights
, 534 U.S. at 119; 
Samson
, 547 U.S. at 848.  “Probation, like incarceration, is a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty.”  
Griffin
, 483 U.S. at 874 (citation omitted) (quotation marks omitted).  “Probation is simply one point (or, more accurately, one set of points) on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service.”  
Id.
  “Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled,” which justifies the “impos[ition] [of] reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens.”  
Knights
, 534 U.S. at 119 (citation omitted) (quotation marks omitted).  
See also
 
State v. Schlosser
, 202 N.W.2d at 139 (“The defendant’s status as a probationer does affect his rights under the Fourth Amendment.”); 
State v. Perbix
, 331 N.W.2d at 18 (“We begin by recognizing that probation is not the same as freedom.”).  Yet, probationers have greater expectations of privacy than do parolees or prisoners.  
Samson
, 547 U.S. at 850.

[¶36] In 
Samson
 a parolee’s suspicionless search was deemed constitutional after the Court concluded the legitimate governmental interest exceeded the parolee’s expectation of privacy.  The State’s interest was described as “substantial”:

“This Court has repeatedly acknowledged that a State has ‘an “overwhelming interest”’ in supervising parolees because ‘“parolees . . . are more likely to commit future criminal offenses.”’  
Pennsylvania Bd. of Probation and Parole
, 524 U.S., at 365, 118 S.Ct. 2014 (explaining that the interest in combating recidivism ‘is the very premise behind the system of close parole supervision’).  Similarly, this Court has repeatedly acknowledged that a State’s interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment.”

547 U.S. at 853.

[¶37] Penalties imposed in criminal proceedings should bear the hallmark of proportionality.  
See
 Leo M. Romero, 
Punitive Damages, Criminal Punishment and Proportionality: The Importance of Legislative Limits
, 41 Conn. L. Rev. 109, 118 (2008) (“Proportionality of punishment to an offense involves two judgments—how serious is the offense and how much punishment does it deserve.  In the case of criminal punishment, legislatures make these judgments.”).  Legislative judgment, as an expression of the public will, typically imposes more serious penalties on more serious crimes.  
Id.
  Presumably, the converse also is true, punishing less serious crimes less strictly.  If the state’s interest in supervising parolees upon release from prison is “overwhelming,” the corollary is that the state’s interest in restraining the liberty of an unsupervised probationer is much less.

[¶38] The defendant’s expectation of privacy is the other interest to be weighed.  In 
Samson
, the parolee’s privacy interests were severely limited due to his conditions of release from incarceration for being a felon in possession of a firearm.  547 U.S. at 846.  Samson’s parole conditions (1) required him to immediately report to his parole officer upon release from prison; (2) required him to give 72-hour notice of change of employment; (3) required him to request permission to travel more than 50 miles from his place of habitation; (4) prohibited him from engaging in criminal conduct; (5) barred him from possessing firearms or weapons; and (6) subjected him to psychiatric treatment or other special conditions as were subsequently imposed by the Board of Parole Hearings or the California Department of Corrections.  
Id.
 at 851-52.

[¶39] By contrast to 
Samson
, Ballard pleaded guilty to two misdemeanor drug crimes.  For one he was fined $200 and was sentenced to 180 days in jail with 150 days suspended.  He received credit for pretrial time served in jail.  Nothing indicates Ballard served time in jail after pleading guilty.  He was placed on unsupervised probation, and his conditions while on  probation were to undergo a chemical dependency evaluation, to be subject to warrantless searches and chemical testing.  For the second crime, Ballard received a 90-day suspended jail sentence, was fined $725 and was placed on unsupervised probation.

[¶40] Ballard’s minimal unsupervised probation conditions stand in stark contrast to Samson’s extensive parole restraints, limitations and loss of liberty after prison time.  Ballard pleaded guilty to two misdemeanors, as opposed to Samson’s felony conviction.  Ballard was not incarcerated after his guilty pleas; Samson was paroled after time in prison.  Ballard was not subject to supervision for either conviction.  Samson was heavily supervised and his liberty was severely curtailed in virtually every respect important to a law-abiding person.  Samson’s associational rights were severely curtailed.  Samson’s travel rights were similarly limited.  Samson was required to report his movements and changes in employment while Ballard had no similar constraints.  Samson was subject to onerous and intrusive changes to his parole conditions, including psychiatric treatment or other special conditions.  Ballard faced no such uncertainty and suffered no comparable loss of liberty.

[¶41] The United States Supreme Court described a criminal defendant’s Fourth Amendment privacy interests as a “continuum.”  
Samson
, 547 U.S. at 850. (“[P]arolees are on the ‘continuum’ of state-imposed punishments.  On this continuum, parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment.”) (citation omitted).  Based on that continuum, we do not equate Samson’s extensive parole constraints with Ballard’s modest conditions of unsupervised probation.  We therefore cannot conclude the governmental interest outweighs Ballard’s expectation of privacy so that Ballard’s suspicionless search of his person and his home is reasonable under the Fourth Amendment.

[¶42] Because the suspicionless search of Ballard’s home was constitutionally unreasonable, the district court erred in denying his motion to suppress the fruits of the search.  We reverse and remand to allow Ballard to withdraw his guilty plea.

[¶43] Daniel J. Crothers

Carol Ronning Kapsner

Lisa Fair McEvers

McEvers, Justice, concurring specially.

[¶44] I agree with the majority that a criminal defendant’s Fourth Amendment privacy interests are weighed against the governmental interests on a continuum. I write separately to point out that this case is different than any of the cases cited by the majority or the dissenters because Ballard was placed on unsupervised probation. The government interest in restricting a defendant’s privacy is obviously less for a defendant on unsupervised probation than supervised probation. The difference should weigh into the reasonableness of the search.

[¶45] When a court suspends all or part of a sentence, the court is required to place a defendant on probation. N.D.C.C. § 12.1-32-02(3).  Under N.D.C.C. § 12.1-32-07(1), individuals convicted of certain crimes are required to be placed on supervised probation based on the seriousness of the crime or that the defendant was convicted of a subsequent offense. The more serious offenders are required by statute to be placed on supervised probation under the management and supervision of the department of corrections. Those convicted of less serious crimes, such as class A misdemeanors, may be placed on supervised probation with the department of corrections or other responsible party. 
Id
. For other lesser crimes, A misdemeanors and below, the court has the discretion to place the defendant under the supervision of a community corrections program other than the department of corrections. The court also has the discretion to place these lower level offenders to unsupervised probation. N.D.C.C. § 12.1-32-06.1. The legislature has created this structure in an effort to protect the public and reduce recidivism, while still allowing judges some discretion to determine the level of supervision necessary.

[¶46] The court did not designate any department or community program to supervise Ballard. It stands to reason that the court considered Ballard’s misdemeanor crimes to be low level and low risk to society by choosing to place him on unsupervised probation. The court did not designate law enforcement or any other community corrections program to supervise, monitor or enforce the terms of Ballard’s probation. The search clause used here required Ballard to “submit to a search of his person, place and vehicle at the request of law enforcement without a warrant.” The search term did not specifically include his “place of residence,” although arguably that is likely what the judge intended. The search term set no other parameters, such as the time of day or level of suspicion necessary for the search.

[¶47] When the court imposes a sentence to probation, the defendant must be given a certificate explicitly setting the conditions of release. N.D.C.C. § 12.1-32-07(5). This search term here did not explicitly include Ballard’s place of residence. Ballard has not challenged the stop of the vehicle or the search of his person or his vehicle. Neither of these searches produced any contraband. Under these circumstances, it was unreasonable for the police officer to search Ballard’s home without consent, without a warrant and without reasonable suspicion. Ballard’s place of residence was not even specifically listed in the search clause. Any suspicion the officer may have had due to Ballard being with another low risk person on unsupervised probation should have dissipated when the search of the vehicle and his person turned up nothing. Based on the facts of this case, the search of Ballard’s home was constitutionally unreasonable.

[¶48] Lisa Fair McEvers

Sandstrom, Justice, dissenting.

[¶49] I respectfully dissent.

[¶50] Because the majority erroneously concludes the United States Constitution requires reasonable suspicion for probation searches, I dissent.  The majority overreaches the United States Supreme Court decisions and nullifies our own well-established precedents.  In doing so, it needlessly ties the hands of law enforcement, and negates the rehabilitative effects of appropriate probation conditions.

[¶51] Further, even if reasonable suspicion is the standard as declared by the majority, that is a question of law, which we review de novo.  It does not matter whether the officers or the district court thought or said there was reasonable suspicion.  Based on the facts here, including the defendant’s drug-related criminal history and his travel with another on probation for drug-related convictions, there was reasonable suspicion, and we should affirm.

I

[¶52] Ballard argues, and the majority concludes, that because the probationary search was conducted without a showing of reasonable suspicion or probable cause, the district court erred in denying his motion to suppress the evidence found during the probationary search of the residence at which he was staying.  Ballard therefore argues, and the majority concludes, the district court’s order denying his motion to suppress evidence should be reversed, together with the criminal judgment in this matter, and he should be permitted to withdraw his conditional guilty plea.

[¶53] This Court has previously been clear, as we held in 
State v. Smith
, 1999 ND 9, ¶ 9, 589 N.W.2d 546:  “We hold the search did not violate the Fourth Amendment because ‘reasonable suspicion’ is not required for a probationary search as long as the search is reasonable.”

[¶54] The question of whether a warrantless probationary search may be carried out without a showing of probable cause or reasonable suspicion is one that has divided other courts.  
See
 Jay M. Zitter, Annotation, 
Validity of Requirement That, as Condition of Probation, A Defendant Submit to Warrantless Searches
, 99 A.L.R. 5th 557 (2002) (sections 9[a] and 9[b] discuss the division among the nation’s courts).  Although the United States Supreme Court has taken the opportunity to discuss the constitutional parameters of probation and parole searches on various occasions, it has yet to explicitly address the question of whether the Fourth Amendment authorizes a random search of a probationer without any particularized suspicion.  
See, e.g.
, 
Samson v. California
, 547 U.S. 843 (2006) (the Fourth Amendment does not prohibit an officer from conducting a suspicionless search of a parolee); 
United States v. Knights
, 534 U.S. 112 (2001) (question of whether a suspicionless search of a probationer violates the Fourth Amendment left unanswered).

[¶55] In 1987, the United States Supreme Court addressed the constitutionality of probationary searches in 
Griffin v. Wisconsin
, 483 U.S. 868 (1987).  In 
Griffin
, a state regulation provided that a probationary search could be conducted without a warrant so long as the probationer’s supervisor approved, and so long as there were “reasonable grounds” to believe contraband was present.  
Id.
 at 871.  After probation officers received information from law enforcement that the probationer might have been in possession of illegal contraband, a warrantless search was conducted, resulting in the probationer being charged with possessing an illegal firearm.  
Id.
 at 872.  Although the probationer challenged the constitutionality of the warrantless search of his home, the Supreme Court upheld the search, stating, “The search of [the probationer’s] home satisfied the demands of the Fourth Amendment because it was carried out pursuant to a regulation that itself satisfies the Fourth Amendment’s reasonableness requirement under well-established principles.”  
Id.
 at 873.  The 
Griffin
 court stopped short of “equating reasonableness with particularized suspicion” and declined to “articulate a federal reasonable grounds standard.”  
Smith
, 1999 ND 9, ¶ 14, 589 N.W.2d 546 (citing 
Griffin
, at 872).  Instead, the 
Griffin
 court recognized that probation is a special circumstance, and acknowledged a “[s]tate’s operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, likewise presents special needs beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements.”  
Griffin
, at 873-74 (internal quotation marks omitted).

[¶56] In 2001, the United States Supreme Court once again addressed the constitutionality of probationary searches in 
United States v. Knights
, 534 U.S. 112 (2001).  In 
Knights
, a probationer challenged the warrantless probationary search of his home.  
Id.
 at 116.  As part of his conditions of probation, the probationer was required to submit his “person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer.”  
Id.
 at 114.  After law enforcement suspected the probationer was involved in an arson, a search of the probationer’s house was conducted according to the search clause in his conditions of probation.  
Id.
 at 115.  The search yielded evidence connected to the arson, and the probationer was arrested.  
Id.
 at 116.  The probationer moved to suppress the evidence obtained during the probationary search, and the district court granted the motion on the grounds that “the search was for ‘investigatory’ rather than ‘probationary’ purposes.”  
Id.
  The Ninth Circuit Court of Appeals affirmed.  
United States v. Knights
, 219 F.3d 1138, 1145 (9th Cir. 2000) (“[Probationary] searches must be conducted for probation purposes and not as a mere subterfuge for the pursuit of criminal investigations.”).

[¶57] In reviewing the decision of the Ninth Circuit, the United States Supreme Court examined the totality of the circumstances to decide whether the search of the probationer’s home fell within the Fourth Amendment, stating, “[T]he reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual’s privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.”  
Knight
, 534 U.S. at 118-19 (internal quotations marks and citation omitted).  As a result, the Supreme Court held “the balance of these considerations requires no more than reasonable suspicion to conduct a search of [a] probationer’s house.”  
Id.
 at 121.  Because the Supreme Court concluded the search conducted in 
Knights
 was supported by reasonable suspicion, it declined to decide whether “a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment.”  
Id.
 at 120 n.6.

[¶58] Although the United States Supreme Court left open the question of whether the Fourth Amendment authorizes a search solely predicated upon the condition of probation, not reasonable suspicion, it did address, and answer in the affirmative, whether a parolee could be subjected to such a search without violating the Fourth Amendment.  In 
Samson v. California
, a parolee who was placed on parole following a conviction for being a felon in possession of a firearm was stopped by a law enforcement officer and asked whether he had an outstanding parole warrant.  547 U.S. 843, 846 (2006).  After informing the officer he had no outstanding warrants, the parolee was searched, yielding a bag containing methamphetamine, and was charged accordingly.  
Id.
 at 847.  Because the parolee was searched solely on the basis of his status as a parolee, with no individualized suspicion of wrongdoing, the parolee appealed.  
Id.
  The California Court of Appeal affirmed, holding that because California law authorizes searches of parolees with or without cause, such a search is reasonable within the meaning of the Fourth Amendment so long as it is not arbitrary, capricious, or harassing.  
Id.

[¶59] In reviewing the decision of the California Court of Appeal, the United States Supreme Court noted the importance of the state’s interests in “integrating probationers back into the community and combating recidivism,” and employed a Fourth Amendment balancing test to weigh those interests against the parolee’s expectation of privacy.  
Id.
 at 849.  Because the high court recognized the state had an “overwhelming interest” in supervising parolees who do not enjoy the absolute liberty to which average citizens are entitled and are “more likely to commit future criminal offenses,” the Court held that certain privacy intrusions, which would not otherwise be tolerated under the Fourth Amendment, were warranted and that the Fourth Amendment does not prohibit parolees being subjected to suspicionless searches.  
Id.
 at 853 (internal quotation marks and citation omitted).  In reaching its decision that parole searches supported by neither individualized suspicion nor “special needs” are nonetheless reasonable under the Fourth Amendment, the Supreme Court stated:

The touchstone of the Fourth Amendment is reasonableness, not individualized suspicion.  Thus, while this Court’s jurisprudence has often recognized that “to accommodate public and private interests some quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure,” 
United States v. Martinez-Fuerte
, 428 U.S. 543, 560, 96 S. Ct. 3074, 49 L. Ed. 2d 1116 (1976), we have also recognized that the “Fourth Amendment imposes no irreducible requirement of such suspicion,” 
id.
, at 561, 96 S. Ct. 3074.  Therefore, although this Court has only sanctioned suspicionless searches in limited circumstances, namely, programmatic and special needs searches, we have never held that these are the only limited circumstances in which searches absent individualized suspicion could be “reasonable” under the Fourth Amendment.  In light of California’s earnest concerns respecting recidivism, public safety, and reintegration of parolees into productive society, and because the object of the Fourth Amendment is 
reasonableness
, our decision today is far from remarkable.  Nor, given our prior precedents and caveats, is it “unprecedented.”

Samson
, 547 U.S. at 855 n.4.

[¶60] Despite the guidance granted by 
Samson
 in regard to suspicionless, warrantless searches of parolees, state and federal courts around the nation have disagreed as to the constitutional parameters of suspicionless probationary searches.  
Compare
 
Harrell v. State
, Nos. 4D12-1675, 4D12-1676, 2015 WL 1810297, *4 (Fl. Dist. Ct. App. April 22, 2015) (warrantless, suspicionless search of probationer was reasonable even though probation order and statute lacked warrantless search probation condition), 
State v. Vanderkolk
, No. 79S04-1411-CR-718, 2015 WL 3608834, *4 (Ind. June 9, 2015) (a probationer may, by valid advance consent or search term in the conditions of release, authorize a suspicionless, warrantless search), 
State v. Bogert
, 109 A.3d 883, 892 (Vt. 2014) (because of probationer’s weakened expectation of privacy and the state’s countervailing interest in promoting rehabilitation, reasonable suspicion was not a prerequisite to search of probationer’s home and computer), 
State v. Rowan
, 814 N.W.2d 854, 866 (Wis. 2012) (condition of extended supervision allowing for suspicionless probationer search was permissible under the Fourth Amendment), 
People v. Medina
, 158 Cal. App. 4th 1571, 1578 (Cal. Ct. App. 2007) (suspicionless search conducted according to probation conditions does not violate Fourth Amendment so long as it is not undertaken for harassment, or for arbitrary or capricious reasons, or in an unreasonable manner), and 
State v. McAuliffe
, 125 P.3d 276, 282 (Wyo. 2005) (probation conditions requiring probationer to submit to random searches and chemical testing were reasonable under Fourth Amendment), 
with
 
Murry v. Com.
, 762 S.E.2d 573, 581 (Va. 2014) (condition of probation requiring suspicionless, warrantless searches at any time was not reasonable), 
State v. Short
, 851 N.W.2d 474, 506 (Iowa 2014) (absent valid search warrant, search of probationer’s apartment violated state constitution), 
State v. Bennet
, 200 P.3d 455, 463 (Kan. 2009) (under state law, 
Samson
 was not applicable and probationary searches required “a rational, articulable suspicion of a probation violation or other criminal activity”), and 
In re J.E.
, 937 A.2d 421, 422 (Pa. 2007) (warrantless search of probationer’s bedroom must be supported by a reasonable suspicion that the probationer was in violation of his supervision conditions); 
compare also
 
United States v. King
, 736 F.3d 805, 810 (9th Cir. 2013) (a suspicionless search conducted pursuant to probation conditions does not violate the Fourth Amendment), 
United States v. Warren
, 566 F.3d 1211, 1216 (10th Cir. 2009) (“The second exception to the warrant and probable-cause requirements authorizes warrantless searches without probable cause (or even reasonable suspicion) . . . when the totality of the circumstances renders the search reasonable.”), 
United States v. Reyes
, 283 F.3d 446, 462 (2d. Cir 2002) (“[P]robation officers conducting a home visit are not subject to the reasonable suspicion standard . . . .”), 
and
 
United States v. Vincent
, 167 F.3d 428, 431 (8th Cir. 1999) (a search provision allowing for suspicionless, warrantless probationary searches is permissible if the search authority is narrowly and properly exercised), 
with
 
United States v. Freeman
, 479 F.3d 743, 749 (10th Cir. 2007) (Kansas Department of Corrections rules governing warrantless parole searches prohibited parole searches without reasonable suspicion), 
United States v. Henry
, 429 F.3d 603, 614 (6th Cir. 2005) (Kentucky Department of Corrections rules require reasonable suspicion to conduct a warrantless probationary search), 
and
 
United States v. Hagenow
, 423 F.3d 638, 642 (7th Cir. 2005) (only reasonable suspicion of criminal activity is needed to justify search of probationer’s residence).

[¶61] Although the United States Court of Appeals for the Eighth Circuit has attempted to stake out the constitutional bounds of warrantless probationary searches, it has remained reluctant to decide whether the constitutionality of a warrantless probationary search requires some quantum of individualized suspicion.  
See
 
United States v. Becker
, 534 F.3d 952 (8th Cir. 2008); 
United States v. Brown
, 346 F.3d 808 (8th Cir. 2003); 
United States v. Vincent
,167 F.3d 428 (8th Cir. 1999) .  For example, in 
United States v. Brown
, a probationer challenged the warrantless probationary search of his residence, which occurred after law enforcement alerted his probation officer of suspected drug activity.  346 F.3d at 810.  Although the court weighed the degree to which the search intruded upon the defendant’s reasonable expectation of privacy against the degree to which the government needed to search to promote its legitimate interests and determined the Fourth Amendment permits a warrantless probationary search based only upon an officer’s reasonable suspicion of a probation violation, it declined to answer whether a probationary search would be upheld if it were not supported by reasonable suspicion.  
Id.
 at 811 n.4 (“In 
Knights
, because both parties conceded that the officer had a reasonable suspicion, the Court reserved the issue of whether a lesser standard would satisfy the Fourth Amendment . . . . Because we find Brown’s probation officers searched with reasonable suspicion, we also reserve the issue.”).  In 
United States v. Becker
, the court again examined the constitutional extent of probationary searches without wading into the issue of whether such searches required individualized suspicion.  534 F.3d 952 (8th Cir. 2008).  Because the search of the probationer’s residence “comported with the terms of [his] probation,” which required reasonable suspicion, and “was supported by the officer’s reasonable suspicion that [he] had violated the terms of his probation,” the court upheld the warrantless probationary search.  
Id.
 at 957.  As in 
Brown
, however, the Eighth Circuit failed to provide any further guidance as to the level of suspicion required to justify a probationary search.  
Id.
 at 957; 
but see
 
United States v. Moser
, 240 F. Supp. 2d 1068, 1074 (D.N.D. 2003) (“[U]nder current North Dakota law, a probation officer does not need reasonable suspicion to search the residence of a probationer pursuant to a standard search clause.  This Court in 
State v. Smith
 held a search of a probationer’s home did not violate the Fourth Amendment because ‘reasonable suspicion’ is not required for a probationary search so long as the search is reasonable.”).  Therefore, Eighth Circuit jurisprudence offers minimal guidance for our analysis in the case currently before us.

[¶62] Although the current Fourth Amendment jurisprudence governing state probationary searches can be described as being in a state of  “considerable disarray,” 
U.S. v. Conway
, 122 F.3d 841, 843 (9th Cir. 1997), we have defined the constitutional bounds of warrantless probationary searches by employing an analysis which balances the state’s legitimate governmental interest in reducing recidivism with the probationer’s right to be free from unreasonable searches.  Therefore, this analysis requires an examination of the reasonableness of the probationary search, not the degree of individualized suspicion upon which the search was based.

[¶63] In 
State v. Perbix
, 331 N.W.2d 14 (N.D. 1983), this Court laid the initial framework for reviewing the constitutionality of warrantless probationary searches.  In 
Perbix
, the defendant was on probation following a drug-related conviction, and his probation required him to submit to “search[es] of his person, place of residence and motor vehicle, at any time, day or night, by any police officer or probation officer, with or without a search warrant and with or without probable cause.”  
Id.
 at 15.  Without a showing of probable cause or reasonable suspicion, law enforcement officers conducted a search of the probationer’s residence.  
Id.
 at 15-16.  As a result, they found marijuana and hashish and charged the probationer with felony drug possession.  
Id.
 at 16.  The probationer moved to suppress the evidence from the search, arguing the search clause was invalid because it violated N.D.C.C. § 12.1-32-

07 by allowing law enforcement officers to conduct the search and because it violated the Fourth Amendment.  
Id.

[¶64] In 
Perbix
, this Court held, under N.D.C.C. § 12.1-32-07, other law enforcement officers have the same authority as probation officers to conduct probationary searches, stating:

[C]onditions of probation requiring the probationer to submit to warrantless searches by probation officers or law enforcement officers, to the extent such searches contribute to the rehabilitation process; are not used as a subterfuge for criminal investigations; and are performed in a reasonable manner, are valid and not violative of the Fourth Amendment.

Perbix
, 331 N.W.2d at 21.  In addition to upholding the constitutionality of the search clause at issue, this Court refused to impose “a requirement that [probation] searches may be permitted only upon a showing of reasonable suspicion or probable cause.”  
Id.
 (internal quotations marks omitted).  Quoting 
Owens v. Kelley
, 681 F.2d 1362, 1368-69 (11th Cir 1982), this Court stated:

Searches of the residence and person of probationers . . . are not conducted only when there is suspicion of a crime. . . . [T]he primary purpose of such searches is to deter the commission of crime and to provide supervisors with information on the progress of their rehabilitative efforts.  It is clear that a requirement that searches only be conducted when officers have “reasonable suspicion” or probable cause that a crime has been committed or that a condition of probation has been violated could completely undermine the purpose of the search condition.

Any search conducted pursuant to the search condition of probation must, of course, be carried out in a reasonable manner and only in furtherance of the purposes of probation.  The terms of the condition do not authorize any “intimidating and harassing search to serve law enforcement ends totally unrelated” to either Owens’ conviction or rehabilitation.  
United States v. Consuelo-Gonzalez
, 521 F.2d at 265.  We thus find that on its face the condition of probation is constitutional and is capable of being lawfully applied.  
See
 
United States v. Gordon
, 540 F.2d 452 (9th Cir. 1976).

Id.
 at 21-22.

[¶65] After the 
Perbix
 decision, this Court reviewed challenges to the validity of probationary searches authorized by a condition of probation “under the standard of whether the search was reasonable, including whether the search was performed in a reasonable manner, whether the search was a subterfuge for criminal investigation, and whether the search contributed to the probationer’s rehabilitation.”  
State v. Maurstad
, 2002 ND 121, ¶ 18, 647 N.W.2d 688 (citing 
State v. Smith
, 1999 ND 9, ¶ 19, 589 N.W.2d 546; 
State v. LaFromboise
, 542 N.W.2d 110, 112-13 (N.D. 1996); 
State v. Raywalt
, 444 N.W.2d 688, 690 (N.D. 1989)).

[¶66] After the United States Supreme Court handed down its decision in 
Griffin v. Wisconsin
, 483 U.S. 868 (1987), we once again reviewed the constitutionality of a warrantless search of a probationer’s residence in 
State v. Smith
, 1999 ND 9, 589 N.W.2d 546.  In 
Smith
, the probationer was on supervised probation and was subject to a search clause requiring him to “submit to a search of his person, vehicle, or place of residence by any probation officer at any time of the day or night, with or without a search warrant.”  
Id.
 at ¶ 2.  Because the probationer was suspected of being involved in drug-related activity, the probation officer searched his home and vehicle and found drugs and paraphernalia.  
Id.
 at ¶ 5.  Although the probationer argued that under 
Griffin
 a probationary search is valid only if it is supported by reasonable suspicion, we refused to overrule 
Perbix
 and impose a requirement that probationary searches may be carried out only upon a showing of probable cause or reasonable suspicion, stating:

Griffin
 does not specifically require reasonable suspicion; it requires the search to be reasonable under a state’s statute on probationer searches.  Further, nothing in 
Griffin
 suggests the clear logic and holding of 
Perbix
 should be reversed.

Smith
, at ¶ 18.

[¶67] After 
United States v. Knights
, 534 U.S. 112 (2001), we examined whether a probationary search that was conducted as a “subterfuge to advance a criminal investigation” was a violation of the Fourth Amendment.  
State v. Maurstad
, 2002 ND 121, ¶ 12, 647 N.W.2d 688.  In 
Maurstad
, a probationer who was placed on probation for drug-related offenses challenged the constitutionality of the probationary search because he claimed the search was done not for “a probationary purpose” but rather “to assist an ongoing criminal investigation.”  
Id.
 at ¶ 7.  In reaching our decision as to whether the search was conducted for an unconstitutional purpose, we stated that 
Knights
 held, in part, the purpose of a probationary search is not relevant when deciding whether a search was valid.  
Id.
 at ¶ 30; 
see also
 
Knights
, 534 U.S. at 122 (“Because our holding rests on ordinary Fourth Amendment analysis that considers all the circumstances of a search, there is no basis for examining official purpose.”).  As a result, we held “the alleged purpose of a probationary search is irrelevant to the determination of its validity” and overruled the portion of 
Perbix
 that required the purpose of a probationary search be considered when determining the validity of the search.  
Id.
 at ¶ 31.

[¶68] In addition to modifying the standard for reviewing the validity of probationary searches, 
Maurstad
 reaffirmed 
Perbix
 and declined to impose a requirement that such searches may be deemed valid only upon a showing of probable cause or reasonable suspicion.  
See
 
Maurstad
, 2002 ND 121, ¶ 22, 647 N.W.2d 688 (citing 
LaFromboise
, 542 N.W.2d at 112 (affirming 
Perbix
); 
Raywalt
, 444 N.W.2d at 690 (reaffirming 
Perbix
)).  Therefore, in light of the United States Supreme Court’s decisions in 
Griffin
, 
Knights
, and 
Samson
 and our decision in 
Maurstad
, the constitutionality of a warrantless probationary search will be upheld if the conditions of probation are:  (1) designed to contribute to the rehabilitation process; (2) performed in a reasonable manner; and (3) valid and not violative of the Fourth Amendment.  
Maurstad
, at ¶¶ 18, 32; 
see
 
Smith
, 1999 ND 9, ¶ 9, 589 N.W.2d 546; 
LaFromboise
, at 112; 
see also
 
United States v. Moser
, 240 F. Supp. 2d 1068, 1074 (D.N.D. 2003) (“The North Dakota Supreme Court in 
State v. Smith
 held that a search of a probationer’s home did not violate the Fourth Amendment because ‘reasonable suspicion’ is not required for a probationary search so long as the search is reasonable.”).

[¶69] Although a district court is granted the discretion to decide what probation conditions to impose on a probationer, under N.D.C.C. § 12.1-32-07, those conditions must be “reasonably necessary to ensure that the defendant will lead a law-

abiding life or to assist the [probationer] to do so.”  N.D.C.C. § 12.1-32-07(2).  In the past, we have held search clauses which require a probationer to submit to warrantless searches of his or her person, place, and vehicle contribute to the rehabilitation process by ensuring the probationer cannot conceal criminality and lives a law-abiding life.  
See
 
Perbix
, 331 N.W.2d at 22; 
see also
 
Smith
, 1999 ND 9, ¶ 24, 589 N.W.2d 546 (warrantless search condition of probation upheld).  In the present case, Ballard was arrested for numerous drug-related charges, and although he was not placed on supervised probation in the traditional sense, which would generally involve more intensive supervision, the court elected to place him on unsupervised probation and require him to submit “to a search of his person, place and vehicle at the request of law enforcement without a warrant” and “to random drug-testing without a warrant or probable cause, including but not limited to urine analysis.”  
See
 N.D.C.C. § 12.1-32-07(1) (“In class A misdemeanor cases, the court may place the defendant under the supervision and management of the department of corrections and rehabilitation or other responsible party.”); N.D.C.C. § 12.1-32-

07(3)(a)-(i) (conditions a court may impose for supervised probation).  Because we recognize probationers are “more likely than the ordinary citizen to violate the law” and because the random search and drug-testing clauses restrain further drug-related activity and deter recidivism, it is reasonable to conclude the exercise of the search clause contributed to the rehabilitation process regardless of whether Ballard’s probation was deemed supervised or unsupervised.  
Samson
, 547 U.S. at 849 (internal quotation marks and citations omitted); 
see
 
Perbix
, at 20 (“We are also cognizant of the fact that criminal activities on the part of drug offenders are often uncovered only through searches of the personal property of the defendant.”).

[¶70] In addition to contributing to Ballard’s rehabilitation process, the probationary search was conducted in a reasonable manner.  In deciding whether similar searches have been conducted in a reasonable manner, we evaluate the manner, intensity, and scope of the search.  
See, e.g.
, 
Maurstad
, 2002 ND 121, ¶¶ 36-37, 647 N.W.2d 688 (a vehicle search conducted within forty-five minutes to an hour was deemed reasonable); 
Smith
, 1999 ND 9, ¶ 19, 589 N.W.2d 546 (a search of probationer’s residence that lasted approximately one hour was deemed reasonable); 
LaFromboise
, 542 N.W.2d at 114 (forced entry into probationer’s residence and three-hour search deemed reasonable in light of circumstances surrounding the search).  In the present case, nothing in the record or Ballard’s arguments suggests the search was performed in an unreasonable length of time or the area being searched was extensively damaged.  Furthermore, the district court found the probationary search of the residence at which Ballard was staying was reasonable because it was done immediately after he was stopped by law enforcement officers, was confined to the bedroom Ballard claimed to be his, and was not done in a harassing manner, and nothing in the record or Ballard’s argument suggests otherwise.  The district court’s finding that the probationary search conducted on Ballard was performed in a reasonable manner is supported by the evidence.  
See
 
State v. Krous
, 2004 ND 136, ¶ 21, 681 N.W.2d 822 (“Any search conducted under a condition of probation must be conducted in a reasonable manner.”); 
LaFromboise
, at 114 (“The trial court found nothing unreasonable about the length or extent of the search under the circumstances, and neither do we. . . . The manner, intensity, and scope of the search were not unreasonable.”).

[¶71] To determine whether the probationary search conducted on Ballard was valid and not violative of the Fourth Amendment, we must begin “by recognizing that probation is not the same as freedom.”  
Perbix
, 331 N.W.2d at 18.  Probation, like incarceration, is “a form of criminal sanction imposed by a court upon an offender after [a] verdict, finding, or plea of guilty.”  
Griffin
, 483 U.S. at 874 (internal quotation marks and citations omitted).  While under probation, rather than enjoying “the absolute liberty to which every citizen is entitled,” probationers are merely granted “conditional liberty properly dependent on observance of special probation restrictions.”  
Id.
 (internal quotation marks and citation omitted).  “Just as other punishments for criminal convictions curtail an offender’s freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens.”  
Knights
, 534 U.S. at 119.

[¶72] In light of probationers’ diminished Fourth Amendment protections, a state’s operation of its probation system “presents ‘special needs’ beyond normal law enforcement that justify departure from the usual warrant and probable-cause requirements.”  
Griffin
, 483 U.S. at 873-74.  For example, in 
Griffin
 the United States Supreme Court stated that to properly supervise probationers convicted of crimes involving drugs or illegal weapons, a “probation agency must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society . . . .” 
Id.
 at 880.  Therefore, the 
Griffin
 court held a probationary search is permissible if conducted under a state law that satisfies the Fourth Amendment’s reasonableness standard.  
Id.
 at 873.  Reasonableness “is determined by assessing, on the one hand, the degree to which [the search] intrudes upon an individual’s privacy, and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.”  
Knights
, 534 U.S. at 118-19.

[¶73] It is well-established in North Dakota, a condition of probation will be deemed valid under the Fourth Amendment if it has a relationship to the crime of which the offender was convicted, relates to conduct which is in itself criminal, and forbids conduct reasonably related to future criminality.  
See
 
Perbix
, 331 N.W.2d at 19.  In the present case, the search and drug-testing clause get their authority from N.D.C.C. § 12.1-32-07(4).  According to this statute, a district court may impose such conditions as it deems appropriate.  The statute specifically provides:

4. When imposing a sentence to probation, probation in conjunction with imprisonment, or probation in conjunction with suspended execution or deferred imposition of sentence, the court may impose such conditions as it deems appropriate and may include any one or more of the following:

. . . .

l. Submit to a medical examination or other reasonable testing for the purpose of determining the defendant’s use of narcotics, marijuana, or other controlled substance whenever required by a probation officer.

. . . .

n. Submit the defendant’s person, place of residence, or vehicle to search and seizure by a probation officer at any time of the day or night, with or without a search warrant.

N.D.C.C. § 12.1-32-07(4)(l) and (n).  Language similar to this was incorporated into Ballard’s conditions of probation.  The conditions provided Ballard was required to submit “to a search of his person, place and vehicle at the request of law enforcement without a warrant” and “to random drug-testing without a warrant or probable cause, including but not limited to a urine analysis.”

[¶74] Although Ballard argues the search conducted under these probation conditions was unreasonable under the Fourth Amendment, we should conclude otherwise.  Here, after Ballard was convicted of drug-related crimes, the district court imposed probation conditions requiring him to submit to random searches and drug tests that could potentially reveal any additional drug offenses.  Therefore, because these probation conditions clearly have a relationship to the crimes of which Ballard was convicted, relate to conduct which is in itself criminal, and forbid conduct reasonably related to future criminality, we conclude the conditions are valid and not violative of the Fourth Amendment.

[¶75] In sum, although Ballard and the majority attempt to equate “reasonableness” with “reasonable grounds” and argues the lack of individualized suspicion of wrongdoing somehow, in and of itself, invalidates the probationary search under the Fourth Amendment, the United States Supreme Court, as well as this Court, has made it abundantly clear this is not the proper analysis for determining the constitutional bounds of probationary searches.  Because reasonableness, not individualized suspicion, is “[t]he touchstone of the Fourth Amendment,” a probationary search authorized by state law does not have to be conducted on the basis of reasonable grounds to be considered “reasonable” under the Fourth Amendment.  
Samson v. California
, 547 U.S. 843, 855 n.4 (2006).  Instead, a probationary search will be deemed reasonable within the meaning of the Fourth Amendment if “it [is] conducted pursuant to a valid regulation governing probationers.”  
Griffin
, 483 U.S. at 880.  In this case, the probationary search contributed to Ballard’s rehabilitation by ensuring he could not conceal criminality or further drug use, was performed in a reasonable manner, intensity, and scope, and was a valid exercise of the state’s probation system, which is authorized by North Dakota law.  I therefore conclude the probationary search was valid and did not violate the Fourth Amendment.

II

[¶76] Even if reasonable suspicion is the standard for a probationary search, as declared by the majority, it is a question of law which we review de novo.  It does not matter whether the officers or the district court thought or said there was reasonable suspicion.  Based on the facts here, including the defendant’s drug-related criminal history and his association with another on probation for drug-related convictions, there was reasonable suspicion, and we should affirm.

[¶77] The majority, at ¶ 3, seems to erroneously believe that the subjective views of the officer are determinative:

The deputy testified at the preliminary hearing that he stopped Ballard for the sole reason of performing a probation search and that he did not have any “reasonable articulabl[e] suspicion” of any drug-related or criminal activity when he made the stop.

[¶78] In 
Zimmerman v. North Dakota Dep’t of Transp.
, 543 N.W.2d 479 (N.D. 1996), we upheld the validity of the stop where the deputy testified his reason for the stop was a basis that was inadequate but his testimony established another basis which would justify the stop.  As we stated in that case:

We resolved a similar issue in 
State v. Smith
, 452 N.W.2d 86, 89 (N.D. 1990).  In 
Smith
, the officer stopped a vehicle to investigate a possible open container violation.  We held the stop was valid even if the officer’s articulated reason for the stop was inadequate, because the officer had made other observations which gave him reasonable cause to stop the vehicle to issue a citation for unlawful deposit of refuse.  We explained:

“In the context of probable cause to arrest, courts have held that, except for pretextual arrests, when an officer makes an arrest which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which there is no probable cause, nor his verbal announcement of the wrong offense, vitiates the arrest.

* * * * *

“The same rule applies to police investigatory practices short of formal arrest.”

Smith
 at 88-89.  
See also
 
State v. Hawley
, 540 N.W.2d 390, 392 (N.D. 1995) (“the reasonable-and-articulable-suspicion standard is objective, and it does not hinge upon the subjective beliefs of the arresting officer.”).

In 
United States v. Cummins
, 920 F.2d 498, 500-501 (8th Cir. 1990), 
cert. denied
, 502 U.S. 962, 112 S. Ct. 428, 116 L. Ed. 2d 448 (1991), the United States Court of Appeals for the Eighth Circuit used similar reasoning in upholding an investigative stop based on the driver’s failure to signal a right turn:

“Defendants argue that Officer Bernal’s initial stop of the green Volkswagen was pretextual, because his real reason for making the stop was based on his suspicions aroused by their strange behavior rather than on Cummins’ failure to signal a right turn.  The defendants conclude that the stop was unreasonable under the Fourth Amendment.  We disagree.  When an officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle. . . . In our view, this otherwise valid stop does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity.  It is also our view that the stop remains valid even if the officer would have ignored the traffic violation but for his other suspicions.

* * * * *

“[W]e see no reason for requiring an officer’s state of mind to perfectly match his legitimate actions.  Such symmetry is not required by the Constitution.  Accordingly, we hold that because Officer Bernal had probable cause to believe that a traffic violation had occurred, his initial stop of the car driven by Cummins was valid.”

The rationale of these cases is persuasive. Officer Sampers testified she observed Zimmerman commit a moving violation, and her observation gave her a valid basis to stop Zimmerman's vehicle. The validity of the stop is not vitiated merely because Officer Sampers subjectively stopped the vehicle for another reason (i.e., Officer Gruebele told her to) which, in itself, may not have provided an adequate basis for the stop.

Id.
 at 482-83.

III

[¶79] I would affirm the district court judgment.

[¶80] Dale V. Sandstrom

VandeWalle, Chief Justice, dissenting.

[¶81] I respectfully dissent.  I agree with much of what Justice Sandstrom has written in dissent.  I write specially to note that in light of the majority opinion, a trial court should henceforth not include in its sentence and probation order a condition of probation such as the one at issue here.  Furthermore, it  is unclear to me what, if any, such condition might survive the majority’s scrutiny.  The unfortunate result is that without more specific guidance the effectiveness of probationary searches intended as a tool to prevent the probationer from further illegal activity is greatly reduced or even worthless.

[¶82] Gerald W. VandeWalle, C.J.

FOOTNOTES
0:
。ゕþ   
The pretext prong was discarded in 
Maurstad
, 2002 ND 121, ¶ 31, 647 N.W.2d 688 (“We hold the alleged purpose of a probationary search is irrelevant to the determination of its validity . . . .”).